LESSEE OF STEPHEN SICARD ET AL. PLAINTIFFS IN ERROR
v. NANCY DAVIS ET AL. DEFENDANTS IN ERROR. SAME
v. JOHN CECIL AND ROBERT SMITHERS.

The act of the legislature of Kentucky, passed in 1796, respecting conveyances, reduces into one all the laws previously existing on the subject of recording conveyances of land. That act does not create a right to convey property which any individual may possess; but restrains that right by certain rules, which it prescribes, and which are deemed necessary for public security. The original right to convey property remains unimpaired, except so far as it is abridged by that statute.

Under that statute the only requisites to a valid conveyance of lands are, that it shall be in writing, and shall be sealed and delivered.

The acknowledgement, and the proof which may authorise the admission of the deed to record, and the recording thereof, are provisions which the law makes for the security of creditors and purchasers. They are essential to the validity of the deed as to persons of that description, not as to the grantor. His estate passes out of him and vests in the grantee, as far as respects himself, as entirely, if the deed be in writing, sealed and delivered, as if it be also acknowledged, or attested and proved by three subscribing witnesses, and recorded in the proper court. In a suit between them, such a deed is completely executed, and would be conclusive, although never admitted to record, nor attested by any subscribing witness. Proof of sealing and delivering would alone be required; and the acknowledgement of the fact by the party would be sufficient proof of it.

If the original deed remained in existence, proof of the hand-writing, added to its being in possession of the grantee, would, it is presumed, be prima facie evidence that it was sealed and delivered. No reason is perceived why such evidence should not be as satisfactory in the case of a deed, as in the case of a bond. Where the deed is lost, positive proof of the hand-writing is not to be expected. The grantee must depend on other proof.

The words of the first section of the statute, declaring, " that no estate of inheritance in lands, &c. shall be conveyed from one to another, unless the conveyance be declared by writing, sealed and delivered, nor shall such conveyance be good against a purchaser for valuable consideration, not having notice thereof, or any creditor, unless the same writing be acknowledged," &c. can apply only to purchasers of the title asserted by virtue of the conveyance, and to creditors of the party who has made it. They protect such purchasers from a conveyance of which they had no notice, and which, if known, would have prevented their making the purchase; because it would have informed them that the title was bad, that the vendor had nothing to sell. But the purchaser from a different person, of a different title, claimed under a different patent, would be entirely unconcerned in the conveyance. To him it would be entirely unimportant, whether this distinct conflicting title was asserted by the original patentee, or by his vendor. The same general terms are applied to creditors and to purchasers; and the word creditors, can mean only the creditors of the vendor.

[Lessee of Sicard et al. v. Davis et al.]

What should be considered sufficient proof of the loss of a deed, to entitle the person holding under it to read a copy of it in evidence; and what was sufficient proof of the execution of the original deed to entitle it to be read in evidence to the jury.

A possession taken under a junior patent, which interferes with a senior patent, the lands covered by which are totally unoccupied by any person holding or claiming under it; is not limited to the actual inclosure, but is co-extensive with the boundaries claimed under such junior patent.

A count in the declaration in an ejectment, on a demise from a different party, asserting a different title, is not distinguishable; so far as respects the act of limitations; from a new action.

The construction of the act of limitations, that if adverse possession be taken in the life time of the ancestor, and be continued for twenty years, and for ten years after the death of the ancestor, no entry having been made by the ancestor or those claiming under him, the entry is barred; is established by the decisions of this court, as well as of the courts of Kentucky.

ERROR to the circuit court of the United States for the district of Kentucky.

On the 8th day of March 1825, Stephen Sicard, a citizen of Pennsylvania, commenced his actions of ejectment in the circuit court for the district of Kentucky against Jesse Davis and others, and against John Cecil, Robert Smithers and others, for the recovery of six thousand six hundred and eighty acres of land, or parts of the same. Those who were in possession of the lands were admitted as defendants; each for himself; and pleaded not guilty. In the progress of the case, the plaintiff was twice non suited, and the non suits were set aside. Nancy Davis, after the death of her husband, became, on motion, a party to the suit.

The demise in the declaration was stated to have been made by Stephen Sicard, on the 30th of January 1815. Afterwards, at November term 1821, upon motion of the plaintiff, leave was given to amend the declaration, by laying a demise in the name of the heirs of the original grantee of the land, Joseph Phillips, and from others to whom the land had been conveyed, before the execution of the deed under which Stephen Sicard acquired his title.

The cause was tried at the October term 1824 of the circuit court, and judgments were rendered for the defendants.

The plaintiff on the trial tendered a bill of exceptions in each case; and the cases were brought up to this court on writs of error prosecuted by him.

The bills of exceptions stated the evidence given by the plaintiff to maintain the suits, to have been a patent dated 6th of June 1786, from the state of Virginia to Joseph Phillips, for six thousand six hundred and eighty acres of land, under a survey dated 4th of May 1784; and proof that the patent covered the land in controversy; and that the defendants were in adverse possession at the commencement of the suit.

Also copies of deeds from Joseph Phillips to Benjamin Stephens, and from Stephens to Samuel R. Marshall, and from Marshall to Stephen Sicard.

The first deed from Joseph Phillips to Benjamin Stephens, is dated the 16th of October 1797. The second deed from Stephens to Marshall, is dated the 25th of December 1797. The deed from Marshall to Sicard is dated the 25th of May 1798; and these deeds covered the land in suit.

The plaintiff also proved, that Phillips, Stephens, Marshall and Sicard, always resided in Pennsylvania, New York and New Jersey.

It was proved that Phillips and Stephens died in the year 1798 or 1799.

The deed of Joseph Phillips to Benjamin Stephens is dated the 16th of October 1797. On the 8th of June 1798, it appears that Joseph Spencer, of Philadelphia, appeared before Hillary Baker, mayor of Philadelphia, and deposed that he saw Joseph Phillips sign, seal and deliver the said deed; that he saw Samuel R. Marshall and John Phillips severally subscribe their respective names thereunto, as witnesses to the signing, sealing and delivering the said deed.

This deed, thus proved, was recorded, together with the deeds from Stephens to Marshall and from Marshall to Sicard, and were, on the 23d of April 1803, certified by the clerk of the court of appeals to have been recorded in his office in Frankford, in the state of Kentucky.

The plaintiff, in order to introduce the copies of the deeds in evidence, and to prove the execution of the original deeds, produced a paper signed by Alexander Parker, stating that he had received, February 9th, 1803, of Mr Stephen Sicard, three deeds for a certain tract of land lying in Nelson county, and state of Kentucky, on Chaplin's fork; the first, Joseph Phillips to Benjamin Stephens for six thousand six hundred and

eighty acres of land; the second, Benjamin Stephens to Samuel R. Marshall for said land; the third, Samuel R. Marshall to Stephen Sicard for same; also a certificate of Ralph Phillips concerning the same: all to be recorded in the office at Frankfort in Kentucky.

The plaintiff also read the deposition of Thomas Wallace, who swore, that in the summer of 1803, said Parker told him that he had left at deponent's store, or with a Mr Scott, his clerk, three deeds, the property of Sicard, to be carried from Lexington to Philadelphia by the deponent. He knows nothing of the papers, nor does he recollect ever to have seen them: he has searched for them among his papers, but is unable to find them.

Alexander Parker proved the receipt, and that he got the deeds recorded in the court of appeals of Kentucky—that he inclosed said deeds directed to Mr Sicard, Philadelphia, and left them with Mr Wallace's clerk, to be taken by Wallace to Sicard. These deeds he *believes* were originals; he has never seen them since; he believes Scott was dead: that for several years he paid the taxes for said land; and saw the entry of said land for taxes in the auditor's office.

Mary Powell, a witness, resident in Philadelphia, swore she is the widow of Benjamin Powell, and that she is fully satisfied from what her husband told her that he did witness a deed to which Benjamin Stephens and Robert Marshall were parties, or at least the said Stephens was the seller therein; her husband died in 1820; and that some time before his death, he went out with Stephen Sicard to attest the fact of his, the said Powell's, having subscribed the said deed as a witness to the execution thereof before a magistrate or alderman.

Joseph Spencer, in his deposition stated that he has some recollection of having witnessed an instrument of writing, supposed by him to be a conveyance of land, (but it was not known to him to whom granted thereby) at the house of John Phillips, which he did some twenty years before the date of his deposition (1822); and his meeting again one or more of the family, he believes Dr Joseph Phillips, in the city of Philadelphia, at the office of Hilary Baker, to authenticate the hand writing to the instrument as a witness to both; but he has no certain date in his memory.

And also the deposition of George Heyl of the city of Philadelphia, notary public, who swears, that on the 17th day of January 1803, at the request of Stephen Sicard, he made correct copies of the deeds from Phillips to Stephens, and Stephens to Marshall, and from Marshall to Sicard: that the copies made by him were from the original deeds, and that he had certified the copies under his seal of office. Sicard told him at the time, he was going to send the originals to Kentucky to be recorded; and assigned this as the motive to have the copies made. The deeds had every appearance of originals. That he had a knowledge of the signature of Hilary Baker, the mayor of the city, before whom they were proved, and of the seal of the city, and believed them genuine: that in the spring of the year 1818, the said Stephen Sicard again called on him and took his deposition before alderman Douglass, at his (the alderman's) office in this city, to the above fact; to which deposition were annexed the said three notarial certified copies, and a mandate from the seventh circuit court of the United States for the Kentucky district to the said Douglass, to take the same—all of which this deponent understood were transmitted to the said court: and that the annexed two copies of deeds, so certified by the clerk of said court, to the best of his knowledge and belief, are copies of his said notarial copies of his said originals.

The deposition of George Rozell, to prove the death of Joseph Phillips in 1798, and who were his heirs at law; and also the decease of Stephens, in the same or the following year, was exhibited.

The defendants gave in evidence patents from the commonwealth of Kentucky, of junior date to that read by the plaintiff; proved the boundaries of those junior grants, and that they included the defendants: and gave evidence that they had settled under faith of those junior patents, and held adversely to the patent offered in evidence by the plaintiff. On motion of the defendants, the court rejected the copies of the deeds aforesaid from Phillips to Stephens, and from Stephens to Marshall, and from Marshall to Sicard; because there was no proof of the execution of the deeds from Phillips to Stephens, or from Stephens to Marshall, so as to let in copies of the original deeds.

The defendants then proved, that in the year 1794 they had adverse possession of the land in controversy, and had continued ever since to hold it adversely accordingly. Whereupon the defendants moved the court to instruct the jury, as follows:

1. That the plaintiff has given no evidence to support the first count, upon the demise of Sicard, and none to support the demise from any of the other lessors; except from such as are heirs of Joseph Phillips, the patentee.

2. That if the jury find from the evidence that the patents of Joseph Phillips and William Loving do interfere and lap, as represented on the connected plat, and that the defendants and those under whom they hold did enter, claiming under said Loving's survey, and took the first possession within the said interference, the said patent of Joseph Phillips being (at the date of such entry and possession taken under Loving's patent) unoccupied by any person holding or claiming under said Phillips's patent; then and in that case the possession of the defendants so taken was not limited to their actual inclosure, but was co-extensive with the boundaries by which they claimed.

3. That if the jury find from the evidence, that the possession of the lands in controversy was taken in the lifetime of Joseph Phillips, the ancestor of the lessor of the plaintiff, and adversely to said Phillips, and that the defendants and those under whom they hold have continued to hold adversely to said Phillips, the ancestor and his heirs, ever since and for more than twenty years before the 17th day of January 1822, when the second count in the declaration was filed, and shall moreover find that said ancestor Joseph Phillips died more than ten years before the said 17th day of January 1822, when the second count was filed, then the said lessors, the heirs of Joseph Phillips, are barred by the statute of limitations.

The circuit court gave these instructions to the jury on the prayer of the defendants.

The case was argued by Mr Sergeant, for the plaintiff in error; and by Mr Wickliffe, for the defendants.

For the plaintiff it was contended:

That the court erred, 1. In rejecting the copies of the deeds

[Lessee of Sicard et al. v. Davis et al.]

from Phillips to Stephens, from Stephens to Marshall, and from Marshall to Sicard.

2. In charging that the possession taken by the defendants, under Loving's survey, was not limited to their actual inclosure, but was co-extensive with the boundaries by which they claimed.

3. In charging that the statute of limitations barred, if there had been adverse possession for more than twenty years before the 17th of January 1822, when the second count in the declaration was filed.

Mr Wickliffe, for the defendants, argued,

1. The plaintiff failed to show any title in Sicard at the date of the demise.

2. The copies of deeds from Phillips, &c. were correctly excluded, because the same were not legally proven in court upon the trial; nor had the same been proved and recorded in accordance with or within the time prescribed by the laws then in force in Kentucky.

3. If recorded or proven, the deeds conveyed no title, were inoperative and against law; the land conveyed being at the date of the said deeds in the adverse legal possession of the defendants.

4. If the plaintiff showed title in the heirs of the patentee, Joseph Phillips, that title was not asserted by the heirs of Phillips against the defendants until the January term 1822, when the amended declaration was filed; consequently their right was barred by the statute of limitations, both of twenty years' adverse possession, and seven years' adverse possession with title.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This is a writ of error to a judgment in ejectment brought by the plaintiffs in error against the defendants in the court of the United States for the seventh circuit and district of Kentucky. The declaration was delivered to the defendants in March 1815. The declaration contains a single count on the demise of Stephen Sicard.

In November term 1821, the plaintiff obtained leave to

amend his declaration by laying a demise in the names of the heirs of the original grantee of the commonwealth, or intermediate grantees; which amended declaration was filed.   The issues were joined in the usual form, and a jury sworn who found a verdict for the defendants, on which judgment was rendered by the court.

At the trial the plaintiff gave in evidence to the jury the patent to Joseph Phillips, and proved that it covered the land in controversy, and that the defendants were in adverse possession at the time of the commencement of this suit.   He also offered in evidence copies of deeds which purported to convey the title from the patentee to Benjamin Stephens, from Stephens to Samuel Robert Marshall, and from Marshall to the plaintiff.   The deed from Phillips to Stephens, dated the 16th day of October 1797, is attested by three subscribing witnesses, and the deed from Stephens to Marshall, dated the 25th day of December 1797, is attested by two subscribing witnesses.   Each deed was proved by one of the subscribing witnesses thereto in June 1798, before Hilary Baker, mayor of the city of Philadelphia, who gave his official certificate thereof in the usual form.   The deed from Marshall to the plaintiff, Sicard, dated the 25th day of May 1798, is attested by two subscribing witnesses, and is acknowledged by the grantor before the mayor of Philadelphia in July 1798, who has given his official certificate thereof.   These deeds were admitted to record on this testimony in April 1803, in the court of appeals in Kentucky.

To prove the loss of the originals, the plaintiff produced the receipt of Alexander Parker, dated the 9th of February 1803, acknowledging the receipt of the said deeds for the purpose of being recorded in the office at Frankfort in Kentucky; also the affidavit of the said Parker stating his receipt, and the purpose for which the deeds were delivered to him; as also that he had caused them to be recorded.   Some time after this, being admitted to record, he was directed by Sicard to send them to him in Philadelphia.   Some time before August 1804, he applied to Thomas Wallace to carry them, who undertook to do so, and directed him to leave them with the clerk of the said Wallace that evening.   The affiant inclosed the three deeds in a sheet of paper directed to the said Sicard.

which he delivered that evening to the said Wallace's clerk, he believes William Scott, who promised to deliver them to the said Wallace. The affiant has never seen them since, but has heard that they were lost. He believes the deeds to have been originals. He paid the taxes on said six thousand six hundred and eighty acres of land for several years, and saw it entered for taxation in the auditor's office. He believes that the said William Scott departed this life twelve or fifteen years ago. The plaintiff also produced the affidavit or deposition of Thomas Wallace, who proved that Mr Alexander Parker did say, that in the summer of 1803 he left at the store, or delivered to a young man (probably Mr Scott), then living with the deponent, sundry papers said to be deeds, the property of the said Sicard, to be carried from Lexington to Philadelphia by the deponent. He knows nothing of the papers, nor does he recollect ever to have seen them. He has searched for them among his papers, but cannot find them. He verily believes they were not delivered to him.

The plaintiff also produced the deposition of Mary Powell, widow of Benjamin Powell, one of the subscribing witnesses to the deed from Benjamin Stephens to Samuel Robert Marshall, who deposed that she understood from her husband that he had witnessed a deed from Stephens to Marshall; that he had been dead about two years. Some time previous to his death, he accompanied the plaintiff, Sicard, for the purpose of attesting the fact of his having subscribed the said deed as a witness; and from several conversations which passed between the said Sicard and her husband, in her presence, she is convinced her husband had a perfect recollection of having subscribed his name as a witness to the said deed. Also the deposition of Joseph Spencer, the subscribing witness to the deed from Phillips to Stephens, who proved the same before the mayor of Philadelphia in June 1798, who says, that he has some recollection of having witnessed an instrument of writing supposed by him to be a conveyance of land, he knew not to whom granted, at the house of Jonathan Phillips, deceased, of Maidenhead, now Lawrence township, Hunterdon county, state of New Jersey, some twenty years ago or more (this deposition was taken in April 1822); and of his meeting again one or more of the family, he believes Doctor Joseph Phillips of that place or neigh-

bourhood was one, in the city of Philadelphia, at the office or Hilary Baker, who was then mayor of the said city, to authenticate the hand-writing to the said instrument of conveyance as party or witness, or both; but has no certain date in his memory whereby he can be more particular.    Also the deposition of George Heyl, notary public of Philadelphia, who says, that he was called on in his official capacity on the 17th of January 1803, to certify and attest to three several copies of original deeds, one from Joseph Phillips to Benjamin Stephens, one from Stephens to Samuel Robert Marshall, and the third from Marshall to Stephen Sicard, dated the 25th of May 1798, all for a tract of land lying and being, &c., containing six thousand six hundred and eighty acres; and that he did, at the request of Stephen Sicard, examine and compare the said three several copies with the original deeds submitted to him by the said Stephen Sicard for that purpose, and found them to be true and faithful copies of the same; that the said deeds appeared to him, in every respect, originals, fair and genuine papers, the parchment, ink, signatures, &c. wearing that aspect.    That the said Stephen Sicard told him at the time that his motive for requiring notarial copies of said originals, was that he was going to send said originals to Kentucky to be recorded.    That the said deponent had a knowledge of the signature of Hilary Baker, the mayor of the city, before whom they were proved, and of the seal of the city, and believed them genuine; that in the spring of the year 1818 the said Stephen Sicard again called on him, and took his deposition before alderman Douglass to the above fact, to which deposition were annexed the said three notarial copies.

The notarial copies mentioned in the foregoing deposition agree with the copies from the record of the court of appeals of Kentucky.

The plaintiff also offered as a witness the clerk of the court of appeals, who deposed that the deeds had been recorded by Thomas S. Hinde, his deputy, now living beyond the reach of the process of this court; but he recollected to have noticed them at the time, and they had, so far as he recollected, every appearance of genuine documents.    The plaintiff also introduced Ralph Phillips, who stated, that he was long acquainted with Joseph Phillips, and Stephens, and Marshall, and he

heard them speak of the conveyance of the tract of land in controversy, as made by Phillips to Stephens, and by Stephens to Marshall, many years ago; but he does not recollect to have seen the deeds.

The defendants gave in evidence patents of the commonwealth of junior date to that of the plaintiff; proved the boundaries of those junior grants, and that they included the defendants: and gave evidence that they had settled under faith of those junior grants, and held adversely to the patent offered in evidence by the plaintiff.

On motion of the defendants, the court rejected the copies of the deeds aforesaid from Phillips to Stephens, and from Stephens to Marshall, and from Marshall to Sicard; because there was no proof of the execution of the deeds from Phillips to Stephens, or from Stephens to Marshall, so as to let in copies of the original deeds.

The defendants then proved that in the year 1794, they had adverse possession of the land in controversy, and had continued ever since to hold it adversely. Whereupon the defendants moved the court to instruct the jury,

1. That the plaintiff has given no evidence to support the first count on the demise of Sicard; and none to support the demise from any of the other lessors, except such as are heirs of Joseph Phillips the patentee.

2. That if the jury find from the evidence that the patents of Joseph Phillips and William Loving do interfere and lap, as represented in the connected plat, and that the defendants and those under whom they hold did enter, claiming under said Loving's survey, and took the first possession within the said interference, the said patent of Joseph Phillips, being (at the date of such patent and possession taken under Loving's patent) unoccupied by any person holding or claiming under said Phillips's patent, then and in that case, the possession of the defendants so taken, was not limited to their actual inclosure, but was co-extensive with the boundaries by which they claimed.

3. That if the jury find from the evidence that the possession of the lands in controversy was taken in the lifetime of Joseph Phillips, the ancestor of the lessors of the plaintiff, and adversely to said Phillips, and that the defendants and those

under whom they hold, have continued to hold adversely to said Phillips, the ancestor, and his heirs ever since, and for more than twenty years before the 17th of January 1822, when the second count in the declaration was filed, and shall moreover find that said ancestor, Joseph Phillips, died more than ten years before the said 17th of January 1822, when the second count was filed; then the said lessors, the heirs of Joseph Phillips, are barred by the statute of limitations; which instructions were given accordingly: to each of which instructions, as well in excluding the deeds as in instructing the jury, the plaintiffs excepted.

The first exception is to the refusal of the court to permit the copies of deeds offered by the plaintiff to be given in evidence to the jury.   These copies were rejected "because there was no proof of the execution of the deeds from Phillips to Stephens, or from Stephens to Marshall."   This objection would have applied to the originals as strongly as to the copies: consequently, we must inquire whether the plaintiff offered such evidence of the execution of the originals as is required by law.

In 1796 the legislature of Kentucky passed a law respecting conveyances, the first section of which enacts, "that no estate of inheritance or freehold, or for a term of more than five years, in lands or tenements, shall be conveyed from one to another, unless the conveyance be declared by writing, sealed and delivered; nor shall such conveyance be good against a purchaser for a valuable consideration, not having notice thereof, or any creditor, unless the same writing be acknowledged by the party or parties who shall have sealed and delivered it, or be proved by three witnesses to be his, her or their act, in the office of the clerk of the court of appeals of a district court, or in a court of quarter sessions or county court, in the manner prescribed by law, or in the manner hereinafter directed, within eight months after the time of sealing and delivering, and be lodged with the clerk of such court to be there recorded."

The third section enacts that "if the party who shall sign and seal any such writing, reside not in this commonwealth, the acknowledgement by such party, or the proof by the number of witnesses requisite, of the sealing and delivering of the writing before any court of law, or the mayor or other chief

magistrate of any city, town or corporation of the county in which the party shall dwell, certified by such court, or mayor, or chief magistrate, in the manner such acts are usually authenticated by them, and offered to the proper court to be recorded within eight months after the sealing and delivering, shall be as effectual as if it had been in the last mentioned court."

This act reduces into one the laws previously existing on this subject. It does not create a right to convey property which any individual may possess, but restrains that right by certain rules which it prescribes, and which are deemed necessary for the public security. The original right to transfer property remains unimpaired, except so far as it is abridged by the statute.

How far does the statute restrain an individual in the exercise of this general original right?

The words are, "that no estate of inheritance, &c. in lands or tenements, shall be conveyed from one to another, unless the conveyance be declared by writing, sealed and delivered."

The only requisites then to a valid conveyance of an estate of inheritance in lands are, that it shall be in writing, and shall be sealed and delivered.

The statute proceeds, "nor shall such conveyance be good against a purchaser for a valuable consideration, not having notice thereof, or any creditor, unless the same writing be acknowledged," &c.

The acknowledgement or the proof which may authorise the admission of the deed to record, and the recording thereof, are provisions which the law makes for the security of creditors and purchasers. They are essential to the validity of the deed, as to persons of that description, not as to the grantor. His estate passes out of him and vests in the grantee, so far as respects himself, as entirely, if the deed be in writing, sealed and delivered, as if it be also acknowledged or attested and proved by three subscribing witnesses, and recorded in the proper court. In a suit between them, such a deed is completely executed, and would be conclusive, although never admitted to record, nor attested by any subscribing witness. Proof of sealing and delivery would alone be required, and the acknowledgement of the fact by the party, would be sufficient proof of it.

[Lessee of Sicard et al. v. Davis et al.]

If the original deed remained in existence, proof of the hand writing, added to its being in possession of the grantee, would, it is presumed, be prima facie evidence that it was sealed and delivered.   No reason is perceived why such evidence should not be as satisfactory in the case of a deed as in the case of a bond.   But the deed is lost, and positive proof of the hand-writing is not to be expected or required.   The grantee must depend on other proof.

The deed purports to have been executed more than thirty years past.   The mayor of Philadelphia, the person entrusted by law with receiving and certifying the acknowledgement or proof of the deed, has certified in legal form that it was proved to him by one of the subscribing witnesses.   Had it been also proved by the other two, the probate would have been suffi-cient; not only as against the party, but as against purchasers and creditors.   It has remained from the time of its execution until its loss, in the possession of those claiming title under it; and in the long course of time which has elapsed since its alleged execution, the grantor has never controverted its ex-istence, nor set up any title to the property it purported to convey.   Parker, the agent of the plaintiff, respecting this transaction, as is presumed, though not averred in terms, from the facts that he brought the deeds from Philadelphia, procured them to be recorded, and took measures for returning them to him; says that he saw them entered for taxation in the auditor's office, and paid the taxes on them for several years.   Samuel Robert Marshall, the grantee of Stephens, and who conveyed the land afterwards to Sicard by a deed regularly authenticated and recorded, which recites the deed from Phillips, and con-veys the land with general warranty, is a subscribing witness to that executed by Phillips.   The notary, who at the instance of Sicard took notarial copies before the deeds were trans-mitted to Kentucky to be recorded; deposes that the appear-ance of the originals was perfectly fair.

Add to these strong circumstances, the testimony which after the long lapse of time the plaintiff has been enabled to procure. Phillips and Stephens have been long dead; Marshall has con-veyed the land to Sicard with a general warranty, by a deed regularly authenticated and recorded, and is of course, if alive, disqualified as a witness.   One witness deposes that he was

long acquainted with Joseph. Phillips and Stephens and Marshall, that he heard them speak of the conveyance of the tract of land in controversy as made by Phillips to Stephens, and by Stephens to Marshall. Joseph Spencer, the subscribing witness to the deed made by Phillips, who proved its execution before the mayor of Philadelphia, has some recollection of having witnessed an instrument of writing, supposed by him to be a conveyance of land, at the house of Jonathan Phillips deceased, twenty years or more before giving his deposition, and of meeting again one or more of the family, he believes doctor Joseph Phillips was one, in the city of Philadelphia, at the office of Hilary Baker, mayor of the city, to authenticate the hand writing to the said instrument of conveyance, as party or witness, or both. Although he does not recollect the transaction with that precision which might be expected from an interested party, he remembers as much as could be expected after so long an interval from an unconcerned person, and enough, we think, to satisfy a court, in connexion with other circumstances, that the deed to which he subscribed his name as a witness was executed, and is the deed, a copy of which was offered by the plaintiff. He remembers attesting an instrument of writing at the house of Jonathan Phillips, which he believed to be a conveyance of land; he remembers meeting some of the family, one of whom was Joseph Phillips, at the office of Hilary Baker, mayor of Philadelphia, for the purpose of authenticating the same instrument. This instrument was authenticated by him before the mayor, as appears by his certificate. The deposition of the widow of Benjamin Powell, too, is entitled to consideration.

We think that in a contest between Joseph Phillips and Stephen Sicard, this testimony and these circumstances would have been held sufficient to prove the execution of his deed; and would have proved that his title was conveyed by it.

If the title of Phillips was conveyed to Sicard, then Sicard could assert that title in a court of justice as effectually as Phillips might assert it; unless the defendants were protected from his claim by some provision of the statute. The first section, after declaring that no estate of inheritance, &c. " in lands or tenements shall be conveyed from one to another,

unless the conveyance be declared by writing, sealed and delivered," adds, " nor shall such conveyance be good against a purchaser for valuable consideration, not having notice thereof, or any creditor, unless the same writing be acknowledged," &c.

These words, we think, can apply only to purchasers of the title asserted by virtue of the conveyance, and to creditors of the party who has made it. They protect such purchasers from a conveyance of which they had no notice, and which, if known, would have prevented their making the purchase; because it would have informed them that the title was bad, that the vendor had nothing to sell. But the purchaser from a different person of a different title, claimed under a different patent, would be entirely unconcerned in the conveyance. To him it would be entirely unimportant, whether this distinct conflicting title was asserted by the original patentee or by his vendee. The same general terms are applied to creditors and to purchasers; and surely the word creditors can mean only creditors of the vendor.

This construction of this part of the statute has, we believe, been uniformly made.

A conveyance then in writing, sealed and delivered by the vendor in each case, was sufficient to pass the title from Phillips to Stephens, and from Stephens to Marshall. The conveyance from Marshall to Sicard is unexceptionable.

If the original deeds had been produced, their execution was, we think, so proved, that they ought to have been submitted to the jury. If this be correct, it cannot be doubted that the copies were admissible. The loss of the originals is proved incontestably, and the truth of the copies is beyond question.

We think, therefore, that the court erred " in rejecting the copies of the deeds from Phillips to Stephens, and from Stephens to Marshall, and from Marshall to Sicard." Consequently, the first instruction to the jury, " that the plaintiff has given no evidence to support the first count on the demise of Sicard," ought not to have been given.

The second instruction, that a possession taken under a junior patent, which interferes with a senior patent, the lands covered by which are totally unoccupied by any person holding or claiming under it, is not limited by the actual inclo-

sure, but is co-extensive with the boundaries claimed under such junior patent, is entirely correct, and conforms to the decisions of this court.

The third instruction is also correct. The second count in the declaration, being on a demise from a different party asserting a different title, is not distinguishable, so far as respects the bar of the act of limitations, from a new action. See Miller's Heirs v. M'Intyre, at this term. The construction of the act of limitations, that if adverse possession be taken in the life time of the ancestor, and be continued for twenty years, and for ten years after the death of the ancestor, no entry being made by the ancestor or those claiming under him, the title is barred, is established by the decisions of this court as well as of the courts of Kentucky. 4 Wheat. 213. This point may perhaps determine the cause ultimately in favour of the defendants. But as this court cannot know judicially that the verdict of the jury was founded on the bar created by the adverse possession of the defendants, and not on the want of title in the plaintiffs, whose title deeds were excluded by the circuit court; the judgment must be reversed, and the cause remanded with directions to award a venire facias de novo.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky, and was argued by counsel; on consideration whereof, this Court is of opinion, that there is error in the proceedings and judgment of the said court in this, that the said court rejected the copies of the deeds offered by the plaintiffs as evidence, being of opinion that there was no proof of the execution of two of them. Therefore it is considered by the Court, that the judgment of the said circuit court be reversed and annulled, and that the cause be remanded to the said circuit court with directions to award a venire facias de novo.