## Downing *vs.* Pickering.

Where an unsuccessful search has been made for a deed in the proper place, proof of its existence, execution and contents, may be made by circumstantial evidence.

R. D. and E. D. once owned land in common, and evidence was offered tending to prove that R. D. conveyed his interest to B., and that the deed was acknowledged; that B. and E. D. then made partition of the land by deed, each conveying to the other; that R. D. received a consideration for his deed, and had never made any claim to the land since, and that he intended his deed should be good and sufficient to pass all his interest in the land.

A deed was produced from B. to E. D. of the east part of the land, and there was evidence that B. and E. D. agreed that deeds should be made between them; that B. went into possession of the west part, and E. D. continued in possession of the rest; that deeds were executed and attested; that B. claimed the west part as his own, and had been in possession of it since his bargain, and that all parties had conducted themselves in relation to the land as if deeds had been executed with all the requisite formalities.—*Held,* that the evidence was competent to be submitted to the jury to prove the existence, contents and execution of the deeds from R. D. to B. and from E. D. to B.

WRIT OF ENTRY, to recover twelve acres of land in Newington.

At the trial, upon the general issue, it appeared that Joshua Downing, by his will dated in 1804, devised to his wife, Elizabeth Downing, one half of his real and personal estate, so long as she should remain his widow, and to his son, Richard Downing, the other half, excepting what was thereinafter devised. He also devised to Richard the half devised to his wife, provided he should survive her.

It was admitted that the testator died seized of the premises, and that his wife died about four years ago.

The plaintiff produced in evidence a quitclaim deed from the said Richard Downing to the plaintiff, who is his daughter, releasing all his right to the premises in question, and dated on the 30th day of April, 1840.

The defendant proved that at the February term, 1823, of the superior court for this county, he recovered judgment against James Berry for $190.50, damages, and $19.84, costs; that an execution issued upon said judgment, which was extended on the premises as the property of James Berry, on the 28th of April, 1823.

The defendant offered evidence tending to show that after the death of the testator, Richard Downing conveyed to James Berry, and that Berry and Elizabeth Downing made a partition of the real estate, he conveying to her, by quitclaim deed, all his interest in the easterly half of the lot, containing in the whole twenty-four acres, and she conveying to him in like manner the westerly half, containing twelve acres, and being the demanded premises.

Upon this point Berry testified that he had made search for, but could not find a deed, either from Elizabeth or Richard Downing to him; that he had some conversation with Richard about such a deed, but did not remember whether one was executed or not; that he made a bargain with Elizabeth, by which he was to have the west end of the twenty-four acres, and she the other half, and that deeds to that effect were to be made; but he did not know that the deeds were ever delivered or executed, although he thought that they were made; that after the bargain, he went into possession of the west part, and she remained in possession of the remainder; that after this she exercised no control over his part, but that he claimed it as his own; that eight or nine years ago the defendant came into possession, and that no persons but himself and the defendant had been in possession since the bargain which he made with Mrs. Downing. He remembered conveying some land in Barrington to one Fabian, about twenty years since, and thought the conversation he had with Richard about a deed from him was about the same time; that the consideration which Fabian was to pay him, was to go for the benefit of Richard, to pay for the land which he was to purchase from Richard, and that Richard received the consideration; that on the 3d day of April, 1811, he gave a note to Isaac Pickering, for a note which Richard held against him and transferred to Pickering; that he also let Pickering have a house frame, which the witness had sold to Richard, and for which Richard gave Pickering an order on the witness. The defendant then produced a deed from Berry to Fabian, dated on the 12th day of December, 1809, which the witness said was the deed referred to. The defendant then produced a quitclaim deed from Berry to

Elizabeth Downing, dated on the 29th day of April, 1816, conveying twelve acres east of the demanded premises.

The defendant also offered Richard Downing as a witness, who testified that he was a son of Joshua and Elizabeth Downing, and brother-in-law to James Berry, and that his father died thirty-six years ago last June. His mother consented to his selling what he conveyed, and the rest was left in her hands; that he once made a deed to James Berry of the twenty-four acres, but did not remember the terms of the deed. He remembered that Berry made a deed to Fabian, and that he witnessed it, and that his deed to Berry was made about the same time. In part payment for his conveyance to Berry, he had what Fabian paid for the Barrington place, and also a house frame, and a note from Berry of $100.00. Before he sold to Berry, his mother occupied the twenty-four acres, and soon afterwards his mother occupied a part, and Berry a part. Berry occupied the upper piece. The defendant occupied after Berry; that since his deed to Berry he has never made any claim to the land; the plaintiff has always lived with him, and he did not know that he told her he had no title; that the plaintiff gave him nothing for the deed, nor did she agree to pay anything.

To this last sentence the plaintiff objected. Mr. Otis, of Barrington, took the acknowledgement of his deed to Berry, and also wrote the deed to Fabian, and the witness made the bargain between Berry and Fabian.

On his cross examination he stated that he did not know if he read the deed from himself to Berry, nor who witnessed it, if any one, nor if it was acknowledged, nor who were present, if anybody. It was made at either Otis's or Berry's house, because there was no other justice in the neighborhood. He did not know if it was delivered or not, quitclaim or warranty, written or printed, nor if it had any seal. He intended Berry should have it, and that the deed should be good and sufficient to pass all his interest in the land.

Harrison Downing was present, and saw the deeds executed from Berry to Elizabeth Downing, and from her to him, but he did not read them.

To this evidence the plaintiff objected, but it was admitted.

After this the witness stated that Elizabeth Downing occupied the east part of the lot and Berry the west part.

The defendant also proved, by Richard Hart, that about the year 1816 he made a deed from Mrs. Downing to Berry, conveying the demanded premises, but did not see it executed, and that he made a division of the land between them.

It was also in evidence that the plaintiff said, about a year ago, that she believed she had heard that her father had given a deed of this land, but that it was not upon record. This was a few days before the deed from Richard Downing to the plaintiff.

It also appeared, from the testimony of Harrison Downing, that the two deeds which he saw executed were attested by the same witnesses, but Otis B. Downing, who proved the execution of the deed from Berry to Elizabeth Downing, did not recollect witnessing any other deed.

Upon this evidence a verdict was taken, by consent, for the tenant; upon which judgment is to be rendered, or it is to be set aside and judgment entered for the demandant, according to the opinion of the court.

*Emery*, for the demandant.

*Christie*, for the tenant.

GILCHRIST, J. The question in this case is, whether there be competent evidence of the existence of a deed from Richard Downing to James Berry, conveying his interest in the land which was devised to him by his father. Richard Downing owned the land in fee, subject to his mother's estate in one half of it during her widowhood. The demandant relies upon a deed from Richard Downing, dated on the 30th day of April, 1840.

The tenant's case is, that about twenty years ago, Richard conveyed the land to Berry, and that he has Berry's title, by extending an execution upon the land as Berry's property. The evidence is that Berry and Richard conversed about a deed from Richard. On the 12th day of December, 1809, Berry conveyed

a tract of land to one Fabian, and Richard received the consid-
eration for that conveyance in payment for the land which he
agreed to sell to Berry. Richard remembered that he once made
a deed to Berry of twenty-four acres of the land, and that it was
about the time that Berry conveyed to Fabian; but he remem-
bered nothing about the terms of the deed, nor whether it was
executed or acknowledged, but he meant that Berry should have
all his interest in the land. In part payment for the land, he
received what Fabian was to pay Berry, and a house frame, and
a note for one hundred dollars. Berry says that he made a bar-
gain with Mrs. Downing, by which she was to have the east end
of the twenty-four acres, and he was to have the west end, and
that deeds for that purpose were to be made, and he thought they
were made, although he did not know that they were delivered
or executed; that he then went into possession of the west part,
and she remained in possession of the remainder, and she exer-
cised no control over his part, but he claimed it as his own. Ber-
ry's statement about the occupation is corroborated by Richard,
who states also that after his deed to Berry he made no claim to
the land. It appears also that deeds were executed between
Berry and Mrs. Downing, although the witness did read them.

Now the fact that Berry went into possession of the west end
of the tract, and agreed with Mrs. Downing that they should
occupy the land in severalty, tends to render it probable that
Berry had an interest in the land. He acquired no interest except
by a deed from Richard Downing. Such a deed was intended
to be made, and it is highly probable that it was made, and also
that the deeds between Berry and Elizabeth Downing were re-
leases from each to the other of the interest in the east and west
parts of the land respectively.

The only question, then, is, whether there are authorities which
justify the admission of evidence of this kind, to prove the exist-
ence and contents of a missing deed.

In the case of *Doe* vs. *Sybourn*, 7 *T. R.* 2, Lord *Kenyon* said,
that in all cases where trustees of an outstanding term ought to
convey to the beneficial owner, he would leave it to the jury to
presume, where such a presumption could reasonably be made,

that they had conveyed accordingly, in order to prevent a just title from being defeated by a mere matter of form. And where a party has proved a right to the beneficial ownership, where the possession has been consistent with the existence of the surrender required to be presumed, and has made it not unreasonable to believe that the surrender should have been made in fact, the presumption has been made accordingly. *Doe* vs. *Cooke*, 6 *Bing*. 174. So a grant or charter from the crown, which ought to be by matter of record, may, under circumstances, be presumed. *Mayor of Hull* vs. *Horner*, *Cowp*. 102. The presumption of a grant is founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there were a transmission of title to the party in possession. *Ricard* vs. *Williams*, 7 *Wheat*. 109. A presumption of title by grant to land may be drawn from other facts than possession. Where, in addition to adverse possession, the demandant occupied land adjoining, and took a deed of mortgage of the land in question, referring for a description to a deed in which it was described as having been bought of the demandant, it was held that the jury were warranted in presuming a deed. *Clark* vs. *Faunce*, 4 *Pick*. 245. In considering the effect of circumstantial evidence in raising a presumption of a deed or instrument, lost by time and accident, as a grant, surrender, or the like, such presumption will be much more readily raised where it is consistent with an apparent title, concurring with actual occupation and possession, than where it is opposed to them. *Doe* vs. *Cooke*, 6 *Bingh*. 174; *Melvin* vs. *Locks & Canals*, 17 *Pick*. 262. Where a great number of circumstances concur, such as peaceable possession of an estate, the presence of those who, upon any other hypothesis would have an adverse title, without claim, all tending to show an undisputed ownership on the part of those who set up such nonappearing grant, they have been considered as presenting so strong a presumption of fact that a deed has been executed, that it has been allowed to stand as proof of such deed. Where there is a proper case for presumption, everything will be presumed necessary to give it effect. Such a question is a mixed question of law and fact, to this extent, that, the facts being found,

it is for the court to advise the jury whether in their nature and quality they are sufficient to raise the presumption proposed, the weight of the evidence being for the jury. *Valentine* vs. *Piper*, 22 *Pick.* 94, 95 ; *Jackson* vs. *Lamb*, 7 *Cowen* 431. It is a matter of fact before the jury whether there be or be not sufficient evidence that the deed did exist. *Read* vs. *Brookman*, 3 *T. R.* 158, *Ashhurst*, J. In the case of *Keene* vs. *Deardon*, 8 *East* 248, the possession and receipt of the rents, issues and profits were consistent with the terms of a certain deed, and it was held that there was no ground for presuming a reconveyance. The probability of the existence of an unknown fact depends upon the nature and strength of the facts and circumstances known. *Schauber* vs. *Jackson*, 2 *Wend.* 59. And circumstantial evidence is admissible to prove the execution of a deed, and that a title was conveyed by it. *Sicard* vs. *Davis*, 6 *Pet.* 138.

In this case, the circumstantial evidence is very strong that Richard Downing conveyed the premises to Berry, and that Berry and Mrs. Downing made a partition of the land by deed. Richard says that he made a deed to Berry and received the consideration therefor from Fabian ; that he has never made any claim to the land since that time ; that Berry and Mrs. Downing then occupied the premises in severalty ; that his deed to Berry was acknowledged, and that he intended the deed should be good and sufficient to pass all his interest in the land.

There is also strong evidence that Mrs. Downing conveyed to Berry twelve acres on the west part of the demanded premises. A deed is produced from Berry to her of the east part of the tract. Berry says that he and Mrs. Downing agreed that deeds should be made between them ; that he went into possession of the west part, and she remained in possession of the rest ; that he claimed the west part as his own, and had been in possession of it since his bargain with her. There is also evidence that deeds were executed between them, and attested, and the parties have always conducted themselves in relation to both parts of the land as if deeds had been executed with all the requisite formalities.

It appears that search has been made for the deeds by the party to whom they are alleged to have been made. We are of

opinion that the circumstances furnish competent evidence to be submitted to the jury of the contents and execution of the deeds. If the jury believe that there was a deed, made in consideration of money expressed in it to have been paid, or that the deed was subscribed by two witnesses, the land will pass by it. *Colby* vs. *Kenniston*, 4 *N. H. Rep.* 263. We think the tenant is entitled to

<div align="right">

*Judgment on the verdict.*