HEZEKIAH CHASE & another *vs.* DANIEL N. BREED.

Evidence that a bond, duly executed and now produced by the obligee, was handed by one of the obligors to the attesting witness, who was his clerk, and afterwards remained in the custody of the latter for some time, and, according to his recollection, remained with the obligor's papers when he left his employment; and that the bond was in the obligor's possession at the time of his decease; without any evidence of instructions given by the obligor to the clerk at the time of handing the bond to him; is insufficient in law to warrant a jury to find a delivery of the bond to the obligee or to any one in his behalf.

Leaving it to the jury to find a delivery of a bond, on evidence insufficient in law to warrant such a verdict, is ground for setting it aside, on a bill of exceptions in which all the evidence is reported.

Under the *St.* of 1856, *c.* 188, which enacts that "parties in all civil actions may be admitted to testify in their own favor, and may be called as witnesses by the opposite party," the deposition of a party is admissible in evidence for him.

ACTION OF CONTRACT on a bond. Trial in the court of common pleas before *Briggs*, J., who signed a bill of exceptions tendered by the defendant, so much of which as is material to the point decided by the court is stated in the opinion of

SHAW, C. J. This is an action upon a bond, alleged to

A

have been given by Josiah Clark of Boston, jointly and severally with the defendant, in August 1837. The bond recited that Henry A. Breed had made certain notes, which were indorsed by the plaintiffs for his accommodation, and held by the Nahant Bank ; and was conditioned to indemnify the plaintiffs against such indorsements, in case the Nahant Bank did not hold suffi‑ cient collateral security to discharge the notes. This suit was commenced in October 1853. Clark, one of the obligors, died in 1844.

The delivery of the bond being denied, it became necessary for the plaintiffs at the trial to prove such delivery. The bond being produced at the trial by the plaintiffs, this was *prima facie* evidence of a delivery ; but it was counteracted and rebutted by proof that, after the decease of Clark, one of the obligors, the instrument was found amongst his papers, and possession of it was obtained by the plaintiffs, if not improperly, at least without the assent of any one having authority to deliver it.

The presiding judge then proceeds to state the testimony of James Jackson, the attesting witness, and that of Ebenezer W. Stone, who was the executor of the will of Clark ; and repeat‑ edly states that he reports all the evidence bearing upon the question of delivery. It is then stated in the bill of exceptions that " there was no other evidence on the subject of the delivery of the bond ; and the evidence was not in any manner attempted to be impeached ; and the defendant's counsel requested the court to instruct the jury, that if all the facts are just as stated by the witnesses, the jury would not be warranted, in law, in finding a delivery of the bond. But his honor the presiding jus‑ tice did not so instruct the jury, but left it to them to find, upon the evidence, whether there was in fact a delivery either to the obligee, or to any one in his behalf." The jury having returned a verdict for the plaintiffs, the defendant excepted.

It appears to the court quite clear, that the evidence thus reported did not prove a delivery of this bond by the obligors, and that the jury could not be warranted in finding a verdict for the plaintiffs.

The *delivery* of a bond, or other sealed instrument, to give it

effect as the deed of the party signing and sealing it, is technical, and has a strict legal signification. It is not enough that it is signed and sealed, and put out of the possession of the signer, to give it that effect. This is too familiar a principle of settled law to require authorities. It must be delivered to the obligee, or some person for his use, either at its date or afterwards; if to a third person, for the use of the obligee, it may be either absolutely, or upon some contingency; in the mean time it is an escrow, and if so deposited with a third party, it must be coupled with authority from the signer to deliver it at a future day, or to hold it till a future authority be given to the depositary by the maker.

But simply placing an instrument, thus signed and sealed, in the custody of a third party, without any purpose expressed, without authority, absolute or contingent upon the lapse of some term of time, or the happening of some future event, to deliver it to the obligee as the deed of the obligor, is not a delivery, in the sense of the law. Where it is delivered to such depositary, with authority to deliver it to the grantee or obligee upon some condition, or the happening of some contingency, it must appear affirmatively that the contingency has happened, or the condition been complied with, before it can take effect as a deed.

Upon the evidence reported, it appears to us that there was no delivery of the instrument as the deed of the obligors. The evidence was competent, and pertinent as far as it went, because it was necessary for the plaintiff to prove the signing and sealing; but it stopped there. The burden of proof was on the plaintiffs to go further and prove a delivery.

The attesting witness, James Jackson, being called for that purpose, testified that he was a clerk in the employment of Clark, the first named obligor, in whose counting-room it was executed; that it was not then delivered to the obligee, who was present, but was handed to the witness, he thinks by Clark, his employer, without any authority, or instruction what he should do with it, that he recollects; that it remained in his custody some time, he thinks months; does not remember why

it was handed to him ; thinks it remained in the counting-room when he left Clark's employment. Then, from the testimony of Stone, it appears that the instrument was in the possession of Clark at the time of his decease, and the possession of it was obtained by the plaintiff, if not improperly, at least without the agency of any body having any authority to deliver it.

But here we are met with a serious, not to say formidable objection, on the ground that a decision in favor of the defendant would be to set aside the verdict the plaintiffs have obtained, as a verdict against evidence. And the argument is earnestly pressed by the learned counsel for the plaintiffs, that this court cannot, upon a bill of exceptions, set aside a verdict as against evidence. It is argued, and it is undoubtedly true, that it is not the ordinary province of a bill of exceptions to present a case to this court for revision of the evidence, to reconsider and decide questions of fact; and the authorities to that point we would not in any respect weaken or impugn. *Commonwealth* v. *Morris*, 1 Cush. 391. *Barnacoat* v. *Gunpowder*, 1 Met. 225. *French* v *Bancroft*, 1 Met. 502.

The reason obviously is, that the province of this court, on a bill of exceptions, is to revise questions of law, and that ordinarily, in a bill of exceptions, the evidence is not fully reported, and is not reported with a view to enable this court to decide whether the verdict is contrary to evidence or not.

Perhaps a judge at nisi prius may not be required, and in ordinary cases, and indeed in most cases, it would be irregular and inconvenient, to express an opinion to the jury, whether on the whole evidence they would or would not be warranted in finding a verdict one way or the other. But it appears to us that this case presents itself in a different aspect; the judge is careful to state that he gives all the evidence, and adds, *ex industria*, that no evidence appeared on either side to control or impeach it ; he seems therefore, by allowing a bill of exceptions in this form, to have adopted this mode of raising and presenting the question of law, whether on these facts testified of, if believed and found all true, the plaintiffs would be

entitled to a verdict, having in effect, by declining to give any instruction on the subject, given the jury to understand that they might find a verdict either way, upon the evidence, according to their judgment, which would be valid in law.

It is no doubt true, that the question of the delivery of a deed, and of the time of its delivery, is a question of fact for the jury. But, like many other such questions of fact, it was, a mixed question of fact and law, to be decided by the jury under certain directions in matter of law, as to what constitutes a delivery. It is, in this respect, like many other facts originally left open to the jury, but in regard to which, after a long course of practice and many judicial decisions, certain rules become established, to which, as rules of law, juries must conform.

For instance, originally notice to an indorser by the holder of a negotiable security must be given within a reasonable time. But after it had been repeatedly adjudged by judicial decisions, and the verdicts of special juries, that, by the law and the custom of merchants, notice, to be reasonable, must be given as early as the day after the dishonor, it was held, though still a question of fact for the jury, if a jury would find the notice reasonable where there was no sufficient evidence according to the rule and custom thus established, it would be bad, and the verdict set aside. *Tindal* v. *Brown,* 1 T. R. 167. And to show how this has since been applied in English practice, we cite *Lawson* v. *Sherwood,* 1 Stark. R. 314. In an action by indorsee against indorser, a witness stated that either two or three days after dishonor the notice was given, notice in two days being in time, but notice on the third day too late, and Lord Ellenborough said : " It lies upon the plaintiff to show that notice was given · in due time, and I cannot go upon probable evidence without positive proof of the fact. The *onus probandi* lies upon the plaintiff, and since he has not proved due notice, he must be called."

In like manner, it appears to us that the question of the delivery of an instrument, signed and sealed as the deed of the obligor, is a mixed question of law and fact, to be found by the jury under proper instructions from the judge, as to what acts,

including the intent and purpose with which they are done ; and, if placed in the custody of a third person, the authority given to such depositary ; if upon any contingency, the happening of such contingency, and the acts of the depositary. But if, instead of this, he carefully details all the evidence, and states that, in opposition to the motion of the defendant, he left it to the jury to find for the plaintiffs, on evidence alleged to be insufficient to· warrant it, it appears to us to be, in effect, a decision in point of law, upon which he intends to give the benefit of an exception, and shapes his bill of exceptions accordingly. We are fearful therefore that if we were now to decline considering the bill of exceptions, it would be doing injustice to the party taking them, and who must take such a bill of exceptions as the judge at nisi prius can allow. It would, in effect, be to adjudge that the defendant is chargeable as upon a legal obligation, without the expression of any judicial opinion in either court, that, upon the facts proved, he has entered into any legal contract. If it be said that the presiding judge did not express, or mean to express any opinion in matter of law, whether the facts proved, if believed, constituted a delivery of the bond, then he submitted a question of law to the jury, which would itself be wrong, and warrant setting aside the verdict, if the jury decided against law.

We certainly do not commend this mode of bringing up a case by exceptions, though perhaps it would be too rash to say that in no possible case can it be expedient or necessary. In the present case, we think the court might have instructed, and the counsel might have moved the court to instruct the jury, as to what facts and circumstances, after proof of signing and sealing an instrument, would in law have constituted a delivery, so as to make it the deed of the defendant, and what the plaintiffs must prove in that respect. Had he so instructed correctly in matter of law, the presumption is that the jury would have found accordingly. Had he declined so to instruct, or instructed otherwise, the remedy of the defendant, by exceptions, would have been open and plain. Still, as this mode has been adopted by the judge, with the acquiescence of the defendant's counsel

apparently with an intent to obtain the opinion of this court in matter of law, we have not thought it so irregular as to refuse to act upon it, and express an opinion.

But should it be apparent that the case had been irregularly brought up by mutual mistake, we think it would be competent for the court to treat it as a mistrial, set the verdict aside and order a new trial, which would come to the same result, except that it would go to a new trial without any opinion of this court upon the matter of law intended to be presented.

*New trial in this court.*

*O. P. Lord,* for the defendant, to the point that there was no evidence to warrant a jury in finding a delivery of the bond, cited *Carr* v. *Hoxie,* 5 Mason, 60 ; *Fairbanks* v. *Metcalf,* 8 Mass. 230 ; *Maynard* v. *Maynard,* 10 Mass. 456 ; *Eaton* v. *Campbell,* 7 Pick. 10.

*N. W. Harmon & J. W. Perry,* for the plaintiffs, to the point that the question whether a verdict should be set aside as against evidence, could not be raised on a bill of exceptions, cited *Commonwealth* v. *Morris,* 1 Cush. 391 ; *French* v. *Bancroft,* 1 Met. 502 : *Barnacoat* v. *Gunpowder,* 1 Met. 225 ; that the delivery of the deed was a question of fact, which the plaintiff was entitled to have submitted to the jury, if he offered any legal evidence, however slight, 1 Stark. Ev. (4th Amer. ed.) 400, 444 ; *Parker* v. *Dustin,* 2 Foster, 424 ; *Floyd* v. *Taylor,* 12 Ired. 47 ; *Davis* v. *Maxwell,* 12 Met. 286 ; *Farnum* v. *Davidson,* 3 Cush. 232 · *Wentworth* v. *Leonard,* 4 Cush. 414 ; that the testimony might well warrant the jury in finding a delivery, *Doe* v. *Knight,* 5 B. & C. 671 ; *Murray* v. *Stair,* 2 B. & C. 82 ; *Talbot* v. *Hodson,* 7 Taunt. 250 ; *Exton* v. *Scott,* 6 Sim. 31 ; *Hall* v. *Bainbridge,* 12 Ad. & El. N. R. 699 ; *Ball* v. *Taylor,* 1 Car. & P. 417 ; *Doe* v. *Bennett,* 8 Car. & P. 124 ; *Burling* v. *Paterson,* 9 Car. & P 570 ; *Hare* v. *Horton,* 5 B. & Ad. 715 ; *Russell* v. *Coffin,* 8 Pick. 143 ; *Gardner* v. *Collins,* 3 Mason, 398 ; *Lesher* v. *Levan,* 2 Dall. 96 ; *Sicard* v. *Davis,* 6 Pet. 124 ; that if the bond was executed and placed in the hands of the attesting witness for any purpose, or on any condition other than a delivery to the plaintiffs, the burden was on the defendant to prove it, *Currie* v.

Chase & another *v.* Breed.

*Donald*, 2 Wash. (Va.) 58; *Carrick* v. *French*, 7 Humph. 459
*Hall* v. *Harris*, 5 Ired. Eq. 303; *Wheelwright* v. *Wheelwright*,
2 Mass. 447; *Hatch* v. *Hatch*, 9 Mass. 307; and to the point
that if the bond was once delivered, its subsequent possession
by the obligor would not affect the delivery, *Brown* v. *Brown*,
1 Woodb. & M. 325; *Exton* v. *Scott*, 6 Sim. 31.

A trial was had before the chief justice, at April term 1857,
when the principal issue was whether the bond had ever been
delivered to the plaintiffs, or to any one for their use. After the
plaintiff Chase had been called as a witness and testified in be-
half of the plaintiffs, the defendant's counsel offered in evidence,
under the *St.* of 1856, *c.* 188, (which is copied in the margin,*)
the deposition of the defendant, taken at San Francisco in the
State of California, on interrogatories and cross interrogatories
annexed to a commission "to take the depositions on oath of
all such witnesses as either of the parties may desire," upon
which commission was printed the seventh rule of this court.
24 Pick. 386. The plaintiffs' counsel objected to the admission
of the deposition, on the ground that said statute did not au-
thorize a party to testify in his own favor by deposition, but
only upon the stand. But the judge overruled the objection,
and permitted the deposition to be read to the jury. The ver-
dict was for the defendant, and the plaintiffs excepted to this
ruling.

These exceptions were argued at November term 1857.

*Harmon & Perry*, for the plaintiffs. Depositions, being an
unsatisfactory species of evidence, unknown to the common
law, are to be admitted only when clearly authorized by a strict

---

* An act to enable parties in civil actions to be witnesses therein.

Parties in all civil actions may be admitted to testify in their own favor, and
may be called as witnesses by the opposite party; *provided*, that no party so tes-
tifying shall be compelled to criminate himself; and *provided, also*, where the
original party to the contract or cause of action is dead, or when an executor or
administrator is a party to the suit, the other party shall not be admitted to
testify.

construction of the statutes and the rules of court. *Frye* v *Barker*, 2 Pick. 67. *Winooskie Turnpike* v. *Ridley*, 8 Verm. 404. *Bell* v. *Morrison*, 1 Pet. 355. *Wallace* v. *Mease*, 4 Yeates, 520.

The *St.* of 1856, *c.* 188, does not make a party "a witness" within the meaning of the Rev. Sts. *c.* 94, §§ 14 *& seq.*, providing for the taking of depositions. It only enacts that parties may "be *admitted* to testify," and may "be *called as* witnesses"—words implying that the party must appear in person before the court. The directions in the seventh rule of this court, copied in this commission, that "neither party shall be permitted to attend at the taking of 'such deposition," &c., are utterly inconsistent with taking the deposition of the party himself. And the *St.* of 1857, *c.* 305, § 2, shows that the legislature thought an express statute necessary in order to warrant the taking of depositions of parties.

The case of *Frye* v. *Barker*, 2 Pick. 65, was very like this. In that case, after the defendant had pleaded usury in the contract sued upon, and tendered his oath in support of his plea, the deposition of the plaintiff, who was so infirm as to be unable to come into court, was offered in evidence under *St.* 1783, *c.* 55, § 2, which provided that if the debtor should "come into court" and offer to make oath, &c., the contract on which usury was taken should be void, "unless the creditor will swear" that no usury had been taken. But the court rejected the deposition, Parker, C. J. saying: "The court have no authority to cause depositions to be taken, except where such authority is given by statute. It was argued, that it was probably the intention of the legislature to make a difference between the plaintiff and defendant, in saying that the plaintiff shall *swear*, and that the defendant shall *come into court*. But the answer to this is satisfactory, that the plaintiff is presumed to be in court." "There might be more danger of false swearing, than where the party is under the influence of the solemnity of a court. We know of no case in which a party has the benefit of his own oath upon a trial, except where the oath is administered in court. Thus in the case of book accounts; a man might fail to substantiate such charges, in consequence of being unable to come into court

to make oath to them, but we do not recollect an instance in which his oath has been taken out of court." 2 Pick. 67.

*Lord & S. C. Bancroft,* for the defendant.

METCALF, J. It is provided by *St.* 1856, *c.* 188, that " parties in all civil actions may be admitted to testify in their own favor, and may be called as witnesses by the opposite party." A question having been raised, whether by this statute the depositions of parties are admissible, the *St.* of 1857, *c.* 305, § 2, has provided that they shall be. The question now before us has therefore ceased to be of any practical importance beyond the present case.

A majority of the court are of opinion that the deposition of the defendant was rightly admitted at the trial. The *St.* of 1856 enabled him " to testify " in his own favor. In the Rev. Sts. *c.* 94, §§ 14, 20, 34, the statements of a deponent are termed his " testimony ; " and § 20 requires that he shall be sworn or affirmed " to testify " the truth. The defendant, therefore, by deposing in his own favor, testified in his own favor, according to the statute meaning of testifying.

But it is argued, that the same clause of the statute, which authorizes a party " to testify " in his own favor, also provides that he " may be called " as a witness by the opposite party ; that this last provision necessarily imports that he is to give his testimony in court; and hence, that the words " may be admitted to testify " are to have the same construction ; inasmuch as there can be no reason why a party should be allowed to give his deposition in his own favor, and yet be required to testify *viva voce,* when called by the opposite party. And we do not suppose that the legislature intended any legal difference in the meaning of the words " admitted to testify " and " may be called as witnesses." The manifest purpose of the statute was, to enable a party to be a witness in his own favor, and to compel him to be a witness for the other party who may require his testimony. And our opinion is, that parties may give testimony in their own favor, and also when called by their adversaries, not only *viva voce* in court, but also by deposition, whenever their deposition would be admissible if they were witnesses for

38 *

a third party. If it were not so, no party residing out of the state could testify in his own favor, without making a journey hither, nor be compelled to testify at the call of the opposite party.

The case of *Frye* v. *Barker*, 2 Pick. 65, was pressed in argument by the plaintiffs' counsel. In that case it was decided, that in a suit on a promissory note, the plaintiff's oath, taken out of court, could not be admitted, under *St.* 1783, *c.* 55, § 2, that he had not received nor secured usurious interest. The court held that the oath must be administered in court, as the old rule was held concerning the wager of law, in the actions of detinue and debt. 2 Lil. Ab. 674. 3 Bl. Com. 343. 12 Mod. 670. Indeed, the *St.* of 1783 provided that if the debtor should " *come into court* and offer to make oath " that usury had been taken, reserved or secured, and should, if required by the court, swear to the same, then the contract in suit should be held void, unless the creditor should *swear* the contrary. An attempt was made to distinguish between the defendant's coming into court and tendering his oath, and the plaintiff's swearing. But the court held that the different phraseology indicated no difference of meaning as to the place where the oath should be administered; as we now hold that the different phraseology of *St.* 1856, *c.* 188, as to being admitted to testify and being called as witnesses, indicates no difference as to the question whether the testimony must be *viva voce* in court, or in depositions.

*Exceptions overruled.*