THE BANK OF THE UNITED STATES, PLAINTIFFS IN ERROR
v. THE BANK OF WASHINGTON, DEFENDANTS IN ERROR.

The defendants in an execution paid to the agents of the plaintiff the amount of
the debt, and gave a verbal notice that it was their intention to sue out a writ
of error to reverse the judgment. This was afterwards done, and the judg-
ment was reversed. The agents of the plaintiff paid over to him forthwith
the amount received, and the defendants instituted a suit against the agents to
recover the sum paid to them. Held, that they could not recover.

It is a settled rule of law, that upon an erroneous judgment, if there be a regular
execution, the party may justify under it until the judgment is reversed, for
an erroneous judgment is the act of the court.

On the reversal of an erroneous judgment the law raises an obligation in the party
to the record, who has received the benefit of the judgment, to make restitu-
tion to the other party for what he has lost; and the mode of proceeding to
effect this object, may be regulated according to circumstances. Sometimes
it is done by a writ of restitution, without a *scire facias;* when the record shows
the money has been paid, and there is a certainty as to what has been lost.
In other cases, a *scire facias* may be necessary, to ascertain what is to be re-
stored. But as it respects third persons, whatever has been done under the
judgment, whilst it remained in full force, is valid and binding.

Where money is wrongfully and illegally exacted, it is received without any legal
right or authority to receive it; and the law at the very time of payment
creates the obligation to refund it. A notice to recover back the money does
not even in such cases create the right to recover it back; that results from the
illegal exaction of it: and the notice may serve to rebut the inference that it
was a voluntary payment, or made through mistake.

THIS was a writ of error from the circuit court of the United
States of the district of Columbia for the county of Wash-
ington.

The action was assumpsit in the circuit court, and was insti-
tuted by the Bank of Washington against the Bank of the Unit-
ed States for money had and received, to recover the sum of
eight hundred and eighty-one dollars and eighteen cents, with
interest. The case was submitted to that court on the follow-
ing case agreed.

In this case, Triplett and Neale recovered a judgment, at
Alexandria court, at April term 1824, against the Bank of
Washington, which was afterwards taken to the Supreme Court
by writ of error, and there reversed, as appears by the record
of the same in the Supreme Court, and the proceedings in that
court in the matter of the writ of error, Bank of Washington

against Triplett and Neale, decided at January term 1828 of the Supreme Court.   1 Peters, 25.

The Bank of Washington, on the 2d of June 1824, had petitioned for the allowance of a writ of error in the said case, and presented such petition to one of the judges of the Supreme Court, by whom it was refused; and afterwards the said petition was presented to the chief justice of the United States, by whom the writ was allowed on the 15th of March 1825; and the same was accordingly issued as by the record: on the 30th of August 1824, Triplett and Neale sued out execution on said judgment, and immediately sent the same enclosed in a letter to Richard Smith, cashier of the office of discount and deposit of the Bank of the United States at Washington, with an indorsement thereon in writing, who wrote another indorsement thereon, as appears from the said execution and the indorsement thereon, in the words following:

Triplett and Neale v. The Bank of Washington.

Use and benefit of the office of discount and deposit of the United States Washington city.          CHARLES NEALE.

Pay to Mr Brooke Mackall.          RD. SMITH, Cashier.

Received eight hundred and eighty-one dollars and eighteen cents.                    B. MACKALL.

Brooke Mackall, the runner in the said office, and the person mentioned in the last of said indorsements, presented the said execution, &c. to the Bank of Washington, and there, on the 9th of September 1824, received the sum of eight hundred and eighty-one dollars and eighteen cents, and signed the receipt thereon.   And at the time of signing the same, William A. Bradley, then cashier of the Bank of Washington, verbally gave notice to said Mackall, that it was the intention of said Bank of Washington to appeal to the Supreme Court, and that the said office of discount and deposit would be expected, in case of a reversal of the judgment, to refund the amount.   The said Mackall received the said sum as the amount of principal and interest accrued on said judgment, as appears by his receipts on the said execution: which sum he delivered to said Smith, who entered it to the credit of C. Neale, one of the firm of Triplett and Neale, on the proper books of the said office.   Before the delivery of the said execution to the said Smith, as aforesaid, C. Neale, one of the

said firm of Triplett and Neale, had promised said Smith to appropriate the money, expected to be recovered from the bank of Washington in said suit, to reduce certain accommodation discounts which he, the said Neale, had running in said bank, upon notes drawn by him and indorsed by indorsers as sureties for the due payment thereof, which discounts were still running upon such notes at the time and times the said execution was so delivered, and when the money was paid as aforesaid. The said Smith received the said execution with the said Neale's said indorsement thereon, as he understood and considered, for collection; and when collected, he deposited the same in bank to said Neale's credit generally; and would have sent the same to him at Alexandria, if he had requested him to do so, or would have paid his check for the amount; and immediately on the receipt of said money as aforesaid, said Smith wrote a letter to the said Neale, in the words following to wit:—

OFFICE OF THE BANK OF THE UNITED STATES,
*Washington, September* 9, 1824.

CHRISTOPHER NEALE, Esq.

Dear Sir:—I have received the sum of eight hundred and eighty-one dollars and eighteen cents from the Bank of Washington, in payment of your judgment against it, and have placed the same to your credit. Be good enough to give me specific directions of the way in which you wish it applied.

RD. SMITH, Cashier.

To which letter the said Neale returned the following answer:

Dear Sir:—In reply to your esteemed favour, I have to request that you will apply the money received from the Bank of Washington to the reduction of the notes indorsed by John H. Ladd & Co. and John A. Stewart, equally, after paying Thomas Swann and Walter Jones one hundred dollars between them, or fifty dollars each, as their fees.

*10th September* 1824.                    C. NEALE.

The said Smith applied the said money pursuant to the directions of the last mentioned letter. It was submitted to the court upon the foregoing case agreed, whether the plaintiffs were entitled to recover of the defendants, the money with interest, so received and applied by said Smith, as aforesaid: if the court decide in the affirmative, judgment to be entered for

[The Bank of the United States v. The Bank of Washington.]

the plaintiffs for the sum of eight hundred and eighty-one dollars and eighteen cents, with interest from the 9th day of September 1824 till paid, and costs: otherwise for the defendants with costs, &c. (any objections to the competence of the evidence to be considered by the court).

The circuit court gave judgment for the plaintiffs, and the defendants prosecuted this writ of error.

The cause was argued for the plaintiffs in error by Mr Lear and Mr Sergeant, and for the defendants by Mr Dunlap and Mr Key.

For the plaintiffs it was contended, that the money which was received from the Bank of Washington by the Bank of the United States, was received as the funds of Triplett and Neale, and as their agents: the Bank of the United States did not act as the assignees of the judgment, but placed the amount to the credit of Christopher Neale: and, afterwards, by special directions, appropriated it to the reduction of the notes of Triplett and Neale in the bank, upon which notes there were good and substantial indorsers, who thereby became released to the extent of the appropriation.

The judgment against the Bank of Washington was valid, and subsisting at the time the money was received. If land had been taken in execution and sold under the judgment, the title of the purchaser would have been good, although the judgment was afterwards reversed, the writ of error not having operated as a supersedeas. Indeed, no writ of error was prosecuted until after the payment of the money. 2 Bac. Abr. 505. Barney v. Patterson's Lessee, 6 Har. and Johns.

The judgment being then good and in force, and Triplett and Neale-having at the time it was paid a right to demand and receive the money, the action for money had and received will not lie. That action is an equitable action.

The proper remedy for the defendants in error was a writ of restitution. 6 Com. Dig. Plead. 468, 469; 2 Salk. 587, 588; Rast. Entries, 388; 10 Mass. 433. If money received under circumstances of this kind could be pursued, there would be no limit to such actions.

There was no assignment of the judgment to the Bank of the United States; nor would the court have allowed an assign-

ment to be entered on the record, upon the production of the order of Mr Neale upon the execution, as stated in the case agreed. The Bank of the United States were not treated in the proceedings upon the writ of error as the assignees of the action, and no regard was paid to them in the proceedings in the case of the Bank of Washington v. Triplett and Neale. 1 Peters, 25.

The Bank of the United States were not affected by the notice which was given to the runner of the bank when the money was paid. It was not given to one who had a right to receive it, nor in a form which entitled it to consideration.

Could the notice have any effect? The decision of this question does not depend upon the question of agency.

To make this notice available, it is indispensable that it should be of a matter of which the party has a right to *give* notice, and of which the party to whom the notice is given is bound, or at least has the power to take notice. It must be of something which the party has a right to require.

Had the Bank of Washington a right to stay the receipt of the money by Triplett and Neale; or to prevent them from using it as they pleased, directly or indirectly? The argument supposes, necessarily, that they had a right to intercept it in its course; or, at all events, to prevent the use of it, and detain it for themselves.

When and where did the right arise? The judgment was in full force, and warranted the issuing of this execution; and proceedings under it could not be staid. The command of the writ was to levy the money, and to pay it to the plaintiffs. The money could not be stopped in the hands of the marshal, who was bound to pay it to the plaintiffs; and if he had not paid it they could have brought suit for it. The Bank of Washington could not have stopped it in his hands after payment to the marshal; and yet this is what is sought to be accomplished by the notice.

The case is then only the ordinary case of a judgment liable to be reversed on error; but until reversed, the money belongs to the plaintiff in the execution, to all intents and purposes; liable to pay an equal amount in case of reversal, but not a specific thing. The notice therefore is of a thing totally immaterial, and to be disregarded.

These observations apply to the argument founded on the agency. The utmost extent to which the principle can be carried is, that if an agent, after notice, pay over to his principal what he ought not to pay over, he is himself liable. The mere notice itself is nothing. The important feature is that he ought not to pay over the money. In this case the agency of the cashier was accompanied with no such condition; on the contrary, he was bound to pay over. The Bank of Washington had no right to prevent his doing so. Will assumpsit lie on an order of restitution against the party? This has never been decided, but has been strongly contested.

Mr Dunlap and Mr Key for the defendants in error contended, that the judgment of the circuit court should be affirmed on the following grounds:

1. That money paid on an erroneous judgment, afterwards reversed, is recoverable in an action for money had and received, against the person receiving it, either as original plaintiff or as assignee of the plaintiff.

2. That the indorsement on the execution and the delivering to the Bank of the United States, in this case, made them the assignees of the judgment.

3. That if not so, and Mr Smith received it, as he says he considered it, for collection, the Bank of Washington had no reason so to consider it—but every reason to believe that the Bank of the United States held the judgment for their own "use and benefit," as the indorsement purported, and that they might safely pay it to them, and look to them to refund the money in the event of a reversal.

4. And if not so, and the Bank of the United States were only the agents of Triplett and Neale, and were even *known* to the Bank of Washington to be so, yet the notice given to them, on the payment, makes them liable to the action.

1. The action was well brought, and the case was not one for a writ of restitution, because there was no assignment of the judgment to the Bank of the United States of record. The cause was sent from this court for further trial; and there could be no restitution until a final trial. A writ of restitution only lies against a party on the record. Tidd's Practice, 936, 937, 1137. *Assumpsit* will lie to recover money paid on an erro-

neous judgment.    Esp. 6, 19; 1 Dane's Abr. 181; 2 Munf. 272; 1 Taunt. 359; 7 T. R. 269; 6 Cowen, 297.

2. The Bank of the United States were liable to the Bank of Washington as the assignees of the judgment—as assignees they can be in no better situation than the principal, and they are liable to the same equities.

They received the money as the owners of the judgment, as it became theirs by the indorsement on the execution.   This is the usual mode of transferring judgments; and the circuit court, had an application been made for the purpose, would have made an entry of the assignment on the record.   In this state of the facts, no suit would have laid against Triplett and Neale, as the money was not paid to them.

3. As agents they are liable to repay the money.   The notice to the runner of the Bank, who became, by the authority to receive the money, the agent of the bank for all purposes connected with the transaction, was sufficient.   If money is paid by mistake, it can be recovered back.   Cowp. 565; 1 Chitty's Pl. 25; 2 Lord Raym. 1210; Paley on Agency, 304, 305; 3 M. and S. 344; Livermore, 261.

The agent must be known, to protect him from personal liability to repay the money—Per Mr Justice Thompson in 13 Johns. 77.

The Bank of the United States have the money in their own hands.   It has never been paid over.   They paid a debt due to them by Triplett and Neale; but it does not appear that they gave any new credit in consequence of this appropriation of the money; or that the indorsers of the notes reduced by the same were discharged.   The original securities were retained by the bank.

It was the duty of the Bank of the United States, to have given notice of their agency in the transaction, and then an injunction to stay the funds in their hands would have been obtained: or they could have refused to receive the money after the notice was given; or, having received it, they should have retained it, and have filed a bill of interpleader.   In this state of the proceedings the payers of the money would have been safe, and no prejudice would have arisen to the Bank of the United States.

. Mr Justice THOMPSON delivered the opinion of the Court.

This case comes up on a writ of error to the circuit court of the United States for the district of Columbia.   The judgment in the court below was given upon a statement of facts agreed upon between the parties, substantially as follows.

Triplett and Neale, in April 1824, recovered a judgment against the Bank of Washington for eight hundred and eighty-one dollars and eighteen cents.   A writ of error was prosecuted by the Bank of Washington, and that judgment was reversed by this Court at the January term 1828.   But whilst that judgment was in full force, and before the allowance of the writ of error, Triplett and Neale, on the 30th of August 1824, sued out an execution against the Bank of Washington, and inclosed it to Richard Smith, cashier of the office of discount and deposit of the Bank of the United States at Washington, with the following indorsement:

Triplett and Neale v. The Bank of Washington.

" Use and benefit of the office of discount and deposit U. States, Washington city."   Chr. Neale.   " Pay to Mr Brooke Mackall."   Rd. Smith, cashier.   " Received eight hundred and eighty-one dollars and eighteen cents."   B. Mackall.

B. Mackall, who was the runner in the branch bank, presented the execution to the Bank of Washington and received the amount due thereon, on the 9th of September 1824.   At the time of receiving the same, William A. Bradley, cashier of the Bank of Washington, verbally gave notice to said Mackall, that it was the intention of the Bank of Washington to appeal to the Supreme Court, and that the said office of discount and deposit would be *expected*, in case of reversal of the judgment, to refund the amount.   Mackall paid the money over to Smith, who entered it to the credit of Neale, one of the plaintiffs in the execution.   Before the execution was sent to Smith, Neale had promised him to appropriate the money, expected to be recovered from the Bank of Washington, to reduce certain accommodation discounts, which he had running in the office of discount and deposit.   Smith, when he received the execution with the indorsement thereon, understood and considered, that it was for collection, and the money when received by him was deposited to Neale's credit generally, and he would have sent the money to him at Alexandria if he had requested

him so to do, or would have paid his check for the amount. Immediately on the receipt of the money, Smith wrote to Neale informing him thereof, and asking him for specific directions how to apply it; which letter Neale immediately answered, giving him directions, and the money was applied according to such directions.

Upon this statement of facts the court below gave judgment for the plaintiffs: to reverse which, the present writ of error has been brought.

That the Bank of Washington, on the reversal of the judgment of Triplett and Neale, is entitled to restitution in some form or manner, is not denied. The question is, whether recourse can be had to the Bank of the United States, under the circumstances stated in the case agreed. When the money was paid by the Bank of Washington, the judgment was in full force, and no writ of error allowed, or any measures whatever taken, which could operate as a supersedeas or stay of the execution. Whatever therefore was done under the execution, towards enforcing payment of the judgment, was done under authority of law. Had the marshal, instead of the runner of the bank, gone with the execution and received the money, or coerced payment; he would have been fully justified by authority of the execution: and no declaration or notice on the part of the Bank of Washington of an intention to appeal to the Supreme Court would have rendered his proceedings illegal, or made him in any manner responsible to the defendants in the execution. Suppose it had become necessary for the marshal to sell some of the property of the bank to satisfy the execution, the purchaser would have acquired a good title under such sale, although the bank might have forbid the sale, accompanied by a declaration of an intention to bring a writ of error. This could not revoke the authority of the officer, and while that continued, whatever was done under the execution would be valid. It is a settled rule of law, that upon an erroneous judgment, if there be a regular execution, the party may justify under it until the judgment is reversed; for an erroneous judgment is the act of the court. 1 Stra. 509. 1 Ver. 195. If the marshal might have sold the property of the bank and given a good title to the purchaser, it is difficult to discover any good reason why a payment made by the bank should not

be equally valid, as it respects the rights of third persons.   In neither case does the party against whom the erroneous judgment has been enforced, lose his remedy against the party to the judgment.   On the reversal of the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost.   And the mode of proceeding to effect this object must be regulated according to circumstances.   Sometimes it is done by a writ of restitution, without a scire facias; when the record shows the money has been paid, and there is a certainty as to what has been lost.   In other cases, a scire facias may be necessary, to ascertain what is to be restored.   2 Salk. 587, 588.   Tidd's Prac. 936, 1137, 1138. And, no doubt, circumstances may exist where an action may be sustained to recover back the money.   6 Cowen, 297.   But as it respects third persons, whatever has been done under the judgment, whilst it remained in full force, is valid and binding. A contrary doctrine would be extremely inconvenient, and in a great measure tie up proceedings under a judgment, during the whole time within which a writ of error may be brought. If the bare notice or declaration of an intention to bring a writ of error will invalidate what is afterwards done, should the judgment at any future day be reversed, it would virtually, in many cases, amount to a stay of proceedings on the execution. No such rule is necessary for the protection of the rights of parties.   The writ of error may be so taken out as to operate as a supersedeas.   Or, if a proper case can be made for the interference of a court of chancery, the execution may be stayed by injunction.

It has been argued, however, on the part of the defendants in error, that the Bank of the United States stands in the character of assignees of the judgment, and is thereby subjected to the same responsibility as the original parties, Triplett and Neale.

Without entering into the inquiry whether this would vary the case, as to the responsibility of the plaintiff in error, the evidence does not warrant the conclusion that the Bank of the United States stands in the character of assignees of the judgment.   There is neither the form or the substance of an assignment of the judgment.   No reference whatever, either

Vol. VI.—C

written or verbal, is made to it. The mere indorsement on the execution, "use and benefit of the office of discount and deposit of the United States, Washington city," cannot, in its utmost extent, be considered any thing more than an authority to receive the money, and apply it to the use of the party receiving it. It is no more an assignment of the judgment, than if the authority had been given by a power of attorney in any other manner, or by an order drawn on the Bank of Washington. The whole course of proceeding by the cashier of the office of discount and deposit, shows that he understood the indorsement on the execution merely as an authority to receive the money subject to the order of Neale, with respect to the disposition to be made of it. He did not deal with it as an assignee, having full power and control over the money, but as an agent, subject to the order of his principal. He passed it to his credit on the proper books of the office; and wrote to him, asking specific directions how the money should be applied. He received his directions, and applied it accordingly; and all this was done six months before the allowance of the writ of error.

It is said, however, that although Mr Smith might have considered himself a mere agent to collect the money, the Bank of Washington had no reason so to consider him. There is nothing in the case showing that the Bank of Washington had any information on the subject, except what was derived from the indorsement on the execution; and if that did not authorise such conclusion, the plaintiff in error is not to be prejudiced by such misapprehension. It was a construction given to a written instrument, and if that construction has been mistaken by the defendant in error, it is not the fault of the opposite party.

But again, it is said the payment of the money was accompanied with notice of an intention to appeal to the Supreme Court; and that, in case of reversal, it would be expected that the office of discount and deposit would refund the money.

If the plaintiff in error could be made responsible by any such notice, given even in the most direct and explicit manner, that which was given could not reasonably draw after it any such consequence. It is vague in its terms, and does not assert that the office of discount and deposit would be held responsible to refund the money, but only that it would be *expected*

that it would be done. This is not the language of one who was asserting a legal right, or laying the foundation for a legal remedy. And there is no evidence that even this was communicated to the office.

But the answer to the argument is, that no notice whatever could change the rights of the parties, so as to make the Bank of the United States responsible to refund the money. When the money was paid, there was a legal obligation on the part of the Bank of Washington to pay it; and a legal right on the part of Triplett and Neale to demand and receive it, or to enforce payment of it under the execution. And whatever was done under that execution, whilst the judgment was in full force, was valid and binding on the Bank of Washington, so far as the rights of strangers or third persons are concerned. The reversal of the judgment cannot have a retrospective operation, and make void that which was lawful when done. The reversal of the judgment gives a new right or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party has lost, by reason of the erroneous judgment; and as between the parties to the judgment, there is all the privity necessary to sustain and enforce such right; but as to strangers there is no such privity: and if no legal right existed when the money was paid, to recover it back, no such right could be created by notice of an intention so to do. Where money is wrongfully and illegally exacted, it is received without any legal right or authority to receive it; and the law, at the very time of payment, creates the obligation to refund it. A notice of intention to recover back the money, does not, even in such cases, create the right to recover it back: that results from the illegal exaction of it, and the notice may serve to rebut the inference that it was a voluntary payment, or made through mistake.

The judgment must accordingly be reversed; and judgment entered for the defendant in the court below.