FRED H. GOWEN *vs.* JOHN W. CONLOW, *et al.*

51 213
69 285

Argued Oct. 14, 1892. Decided Oct. 31, 1892.

**Execution Sale under Judgment Afterwards Set Aside.**

> The setting aside of a judgment for the recovery of money, upon grounds not affecting the original validity of the judgment, does not avoid a prior sale of real estate (under execution issued thereon) to a stranger who had purchased in good faith. Statute construed as not having such an effect.

Appeal by plaintiff, Fred H. Gowen, from an order of the District Court of Hennepin County, *Smith*, J., made July 9, 1892, sustaining a demurrer to the complaint.

This action was against the defendants, John W. Conlow and Walter G. Marson, to set aside an execution sale of an undivided half of lot ten (10) in block eight (8) in St. Anthony Falls, Hennepin County, and to have canceled a mortgage for $3,500 on the property, made by Conlow to defendant Marson. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action against them. The demurrer was sustained, and plaintiff appeals.

*Keith, Evans, Thompson & Fairchild,* for appellant.

Appellant does not question the correctness of the rule that in the absence of a controlling statute, the title of a stranger purchasing *bona fide* at an execution sale, is protected as against a subsequent reversal or vacation of the judgment. He bases his claim for relief squarely upon the protection afforded him by 1878 G. S. ch. 66, § 125, as amended by Laws 1887, ch. 61, and as construed by this court in *Drew* v. *City of St. Paul*, 44 Minn. 501. Neither the language of the act, nor its evident purpose and spirit, warrant the construction that it relates only to judgments or decrees in equitable actions where the title to specific real estate is directly involved. The original law provides that "*any judgment*" may be set aside, etc. The amendment provides that title based on "*such judgments*," that is, those included in the original

law, shall not be affected where "such judgments" shall have been of record for the required time. The entire law is remedial in its nature, and designed to protect any who through inadvertence or excusable neglect, have suffered judgments to be entered against them, by which their rights of property are imperiled or lost. It is, at the same time, a protection to the purchaser at a judicial sale, by fixing definitely a period within which, and a mode by which, his title may be made impregnable. The reason, then, for its enactment does not imply that the relief it affords is to be limited to defendants in equitable actions. Such defendants are not special favorites of the law. Nor does the law regard with any special favor purchasers at judicial sales. It has always applied to them the rule of *caveat emptor.*

*Marson & Marson,* for respondents.

It is conceded that the rights of a *bona fide* purchaser at an execution sale are not affected by the vacating of the judgment on which such sale was based. We contend that 1878 G. S. ch. 66, § 125, as amended by Laws 1887, ch. 61, does not change this rule. Formerly when a judgment of a Court of Equity decreed the title to real property, and *bona fide* purchasers bought relying on the judgment, if the judgment was thereafter vacated, they were not protected. *Lord* v. *Hawkins,* 39 Minn. 73. The Statute simply provides that a title thus obtained may, in time, be relied on by *bona fide* purchasers. This was clearly its purpose, and not to upset titles based on sales under writs of execution.

DICKINSON, J. Appeal from an order sustaining the defendants' demurrer to the complaint. The case presented in the complaint may be briefly stated as follows:

In April, 1888, in an action prosecuted by Squires and Thompson in the municipal court of Minneapolis against this plaintiff (Gowen) and others, a judgment for the recovery of money was rendered in favor of Squires and Thompson, and against this plaintiff. A transcript of that judgment was filed in the office of the district court, and execution issued thereon out of the latter court was levied upon cer-

tain real estate of the judgment debtor, this plaintiff. In June, 1888, the land was sold under such execution to one Cranston, and the proper record thereof was filed in the office of the register of deeds. No redemption was made therefrom. The purchaser (Cranston) conveyed the same premises to this defendant, Conlow, and Conlow executed a mortgage on the same to the other defendant, Marson. Both the deed and mortgage were recorded.

In May, 1892, the judgment debtor (this plaintiff) applied to the municipal court to have such judgment against him vacated, and upon such motion that court made its order vacating the judgment, and allowing Gowen to interpose by answer his defense to such action. This order did not in terms purport to set aside or affect the execution sale. This action is brought to have the execution sale set aside, and the record of it and of the conveyance from the purchaser, Cranston, to the defendant Conlow, and of the mortgage of the latter to Marson, declared void, and canceled as clouds upon the plaintiff's title.

The plaintiff shows no right to have the execution sale avoided, or to call in question the title and interest acquired by the defendants through that sale. It does not appear that the judgment was invalid, for want of jurisdiction, nor even that it was erroneous, nor that the execution sale was in any respect irregular or faulty. It is to be assumed that both the judgment and the execution sale were valid and effectual. The only fact disclosed as the ground for the relief sought is that nearly four years after the execution sale the court in which the judgment was rendered set it aside on motion, for the reason, as it would seem from the terms of the order, that the judgment was rendered against Gowen through some excusable neglect on his part. The question, then, is whether a purchase of real estate by a stranger in good faith, at a valid execution sale, under a valid, not void, judgment, is avoided by a subsequent vacating of the judgment.

It seems to be conceded by the appellant that unless by force of some statute such would not be the effect of the vacating of the judgment, and this undoubtedly is the law. *Bank of United States v. Bank of Washington,* 6 Pet. 8; *Stinson v. Ross,* 51 Me. 556; *Wood-*

*cock* v. *Bennet*, 1 Cow. 711; *Kramer* v. *Wellendorff*, (Pa. Sup.) 10 Atl. Rep. 892; *Reynolds* v. *Harris*, 14 Cal. 668; 2 Freem. Judgm. § 484, and cases cited.

By Laws 1887, ch. 61, the following proviso was added to 1878 G. S. ch. 66, § 125,—the law allowing the granting of relief (by setting aside judgments, etc.) from the consequences of surprise, mistake, and excusable neglect: "provided, however, that no relief to be granted hereunder shall operate to affect any title to or estate in real estate affected by such judgment, as against a *bona fide* purchaser or incumbrancer, in any case where such judgment, or a certified copy thereof, shall have been of record in the office of the register of deeds of the county wherein such real estate is situated for a period not less than three years prior to the date of the application for such relief; but nothing herein contained shall operate to prevent the granting of such relief as may be just and equitable against a party to such action, his heirs or devisees." This is relied upon by the appellant as subjecting all sales of real estate, under executions, even to strangers, to the liability of being defeated by the subsequent setting aside of the judgment, unless the judgment shall have been on record for three years in the office of the register of deeds.

Such, we think, was not the purpose or effect of this proviso. From its terms it is apparent that this provision relates only to such judgments as both (1) affect the title to real estate, and (2) may be recorded in the office of the register of deeds; and there are not infrequently judgments of this character, having both of these attributes, and to such judgment the statute is plainly applicable. We refer to judgments which in themselves transfer or affect directly the title to real estate. The statute makes provision for the recording of such judgments in the office of the register of deeds. 1878, G. S. ch. 75, § 32. But a judgment merely for the recovery of money has neither of these characteristics. While, upon being docketed, it becomes a lien generally upon the real estate of the debtor, it neither divests his title nor estate, nor does it invest the creditor with any estate or interest in the property; nor is there any authority in the statute for recording such

a judgment in the office of the register of deeds. It is safe to say that such a proceeding was never thought of, and there is no reason to suppose that the proviso above recited was intended to inaugurate or authorize such a course. It may be added that it would be difficult to assign reasons which would seem to require or render expedient a law to that effect. The legislature, in enacting this proviso, obviously referred only to such judgments as by law might be so recorded.

The structure of the proviso, the form of the enactment, constitutes a further argument against the contention of the appellant. Neither in terms nor by necessary implication does it change the rule of law that an execution sale to a *bona fide* purchaser is not avoided by a subsequent reversal of a merely voidable judgment. It does not declare that titles so acquired shall be so defeated. There was no uncertainty as to the existing law. The attention of the lawmakers was directed to the subject of the effect, as to real-estate titles, of the reversal of judgments. Hence, if the purpose of this enactment had been to so completely change (to reverse) the existing law, it is to be presumed that it would have been affirmatively or positively expressed, and not left to at least questionable inference from language the apparent purpose of which was merely to fix a limit of time beyond which titles adjudicated or transferred by judgment should not be affected by the setting aside of such judgments. It is most probable from the circumstances, and is to be presumed, that it was not unintentional that language of qualified meaning and application was used, properly designating judgments which in themselves operated on the title to real property, and which had been recorded in the register's office.

In *Drew* v. *City of St. Paul*, 44 Minn. 501, (47 N. W. Rep. 158,) the judgment was one determining the title, and what was there said had no reference to the very different case of a judgment merely for the recovery of money.

The conclusion follows that the title and mortgage lien acquired by the defendants, respectively, through the execution sale were not divested or impaired by the setting aside of the judgment. In brief, the complaint shows that the plaintiff's title was effectually divested;

that it has been transferred to the defendant Conlow, and the plaintiff does not appear to have any cause of action.

As the rights of these parties in respect to the land were not affected by the setting aside of the judgment, it is unnecessary to consider whether the municipal court had power to set it aside.

Order affirmed.

(Opinion published 53 N. W. Rep. 365.)