Vol. 119]          OCTOBER 24, 1900.          . 675

Fidelity Trust & Safety Vault Co., &c. v. Louisville Banking Co., &c.

CASE 86—PROCEEDINGS BY RULE, BY LOUISVILLE BANKING CO. AND
OTHERS AGAINST FIDELITY TRUST AND SAFETY VAULT CO. AND
OTHERS TO PAY BACK CERTAIN MONEY RECEIVED BY THEM.—OCT.
24, 1900.

(Omitted from former reports.)

# Fidelity Trust & Safety Vault Co., &c. v. Louisville Banking Co., &c.

# Mutual Life Ins. Co. of Ky. v. Same:

# Seymour v. Same.    Hulsewede v. Same.

# Lane & Burnett v. Same.

APPEAL FROM JEFFERSON CIRCUIT COURT, C. P. DIVISION—EMMET
FIELD, JUDGE.

FROM A JUDGMENT SUSTAINING THE RULE DEFENDANTS APPEAL. RE-
VERSED.

JUDGMENT—FAILURE TO SUPERSEDE—EFFECT.

1. In the settlement of an assigned estate E., a mortgage creditor,
   was adjudged a lien upon assigned property superior to attach-
   ing creditors; this judgment was appealed from, but not su-
   perseded, and the money paid over to E., under order of court,
   and by him distributed among his individual creditors; judg-
   ment was reversed and E.'s lien held not superior to creditors.
   HELD, that upon return to lower court the creditors of the as-
   signed estate can not compel the creditors of E. to return the
   money paid them by E., but they must look solely to E. there-
   for.

JOHN ROBERTS, FOR APPELLANT, SEYMOUR.

LANE & BURNETT, FOR FIDELITY T. & S. V. Co., &c.

KOHN, BAIRD & SPINDLE, FOR HULSEWEDE.

C. B. SEYMOUR, FOR LANE & BURNETT.

### SYNOPSIS.

A party authorized by a valid judgment to withdraw money
from court withdrew same and paid debts of his own when no

Fidelity Trust & Safety Vault Co., &c. v. Louisville Banking Co., &c.

appeal was pending; these creditors ought not to be required to repay the money withdrawn by him.

1. Garnishment of a debt does not give a lien upon any specific fund, but simply imposes a personal liability upon the garnishee. Wade on Attachment, secs. 325 and 334; Rood on Garnishments, sec. 193 and note; Hully v. Chedic, 36 Pac. Rep., 733 (22 Nevada, 127); Mooar v. Walker, 46 Ia., 164; McConnell v. Dunham, 72 Ia., 494; Maish v. Byrd, 48 Fed. Rep., 607; Civil Code, sec. 223.

2. Upon the reversal of a judgment plaintiff in the judgment may be required to repay all that he has received under the judgment; but persons to whom he has made payments can not be so required. Little v. Bunce, 7 N. H., 485; McJilton v. Love, 13 Ill., 495; Bank of United States v. Bank of Washington, 6 Peters, 8; Clark v. Pinney, 6 Cowen, 297; Green v. Stone, 1 H. & J., 405; McLogan v. Brown, 11 Ill., 519; Steelman v. Checsman, Penington, 120; Rubbell v. Broadwell, 8 Ohio, 120; Langley v. Warner, 3 Comst., 327; Green v. Brangle, 84 Va., 913; Freeman on Judgments, 4th Edition, sec. 484; Bank of United States v. Bank of Washington, 6 Peters, 19; Freeman on Executions, sec. 346; Rhorer on Judicial Sales, sec. 576; Gondy v. Hall, 36 Ill., 319; Hayes v. Griffith, 85 Ky., 381; Forstman v. Schulting, 108 N. Y., 110; Butcher v. Henning, 90 Hun, 565.

3. Process by rule of attachment does not lie against persons not parties to the action. Daniell's Chancery Practice, 461 and 1060; Code, sec. 2; Code, sec. 444; Tull v. Gohagon, 3 J. J. M., 378; Miller v. Humphrey, 9 Ky. Law Rep., 359.

4. Interest is not recoverable in a case like this.

5. None of appellants were parties to the reversed judgment; appellant, Mutual Life Insurance Company of Kentucky, had no knowledge nor notice of the judgment, and did not know where Etheridge got the money with which he paid the premiums to it.

HUMPHREY, BURNETT & HUMPHREY, ATTORNEYS FOR APPELLEES.

1. That Etheridge had no valid title to the $6,900 which he withdrew from the registry was declared by this court on the the original appeal and that it was subject to the liens of the attaching creditors, the mandate expressly ordered "that the attachment liens must be modified so as to conform to the opinion.

2. The rule as to an attachment lien is, that when once completed it can not be divested except by some act of the plaintiff or his attorney in the attachment which will operate by way of estoppel.

3. The lien on the attached fund in the case at bar having become "complete," we contend that the fund must remain in lien and be subject to the final or ultimate orders of the court of last resort.

4. This lien was not a contract lien, but it was a legal or statutory lien, and no claim is made that appellees have waived it.

### AUTHORITIES CITED.

Civil Code, sec. 212; Hobson v. Hall, 13 R., 109; Drake on Attachments, sec. 227a, 453; Wright v. Rowland, 4 Abbott Court of Appeals; Fishback v. Ambrose, 13 R., 303; Thomas v. Feese, &c., 21 R., 206; Noonan v. City Newport, &c. (April 27, 1900).

OPINION OF THE COURT BY JUDGE GUFFY—REVERSING.

In 1890 the Etheridge Manufacturing Company, a corporation, made an assignment to George Straeffer, as alleged, for the benefit of all its creditors. Afterwards some, if not all, of these appellees instituted suit and obtained attachments which were properly levied, and also attacked the assignment as fraudulent and as made with the intent to delay and defraud creditors. Said assignee was also summoned as garnishee. N. N. Etheridge, one of the stockholders and officers of said corporation, asserted a mortgage lien upon the proceeds in the hands of said assignee for the sum of $6,000, besides interest.

The court below sustained the attachments, and adjudged the assignment to be fraudulent, and set the same aside; but adjudged the mortgage claim of Etheridge to be a superior lien upon the fund which Straeffer had, under proper orders of the court, paid into court, said amount being more than $20,000, and after said judgment the court below allowed by order said Etheridge, through his attorneys, Lane & Burnett, to withdraw the money adjudged to him, and within a few days, if not on the very day said order was made, the money

678            KENTUCKY REPORTS.            [Vol. 119

Fidelity Trust & Safety Vault Co., &c. v. Louisville Banking Co., &c.

was so withdrawn. These judgments and orders and withdrawal of the money occurred in December, 1894.

After the rendition of the judgment and the said order and collection had been made, the creditors of the corporation prosecuted an appeal to the court of appeals, but these judgments were not superseded. On the 22d of October, 1897, this court reversed the judgment of the lower court in so far as it allowed Etheridge any lien upon said fund prior or even equal to the lien of the attaching creditors. After the return of the cause to the circuit court these appellees obtained rules against the several appellants, requiring them to pay back the several sums of money received by them.

It appears from the responses and testimony in this case that after the withdrawal of said sum, which then amounted to $6,900, that on the 14th day of December, 1894, Etheridge paid out $2,500 thereof to the Fidelity Trust & Safety Vault Company on a mortgage debt of $5,500 to Mrs. E. L. Lane, and afterwards paid to said company $540; that he paid to his attorneys, Lane & Burnett, the sum of $690, which was their charge against him for services rendered him in these cases; that he paid to C. G. Hulsewede and C. B. Seymour, for services that they had rendered him, the sum of $1,380, and to S. E. Roach, on a mortgage debt, $250, and city and State taxes, $615.46, and to the Mutual Life Insurance Company, for insurance on his life, $295.32, and some other sums not necessary to mention.

The substance of the responses of the several appellants herein show that they received the various sums of money named therein in payment of debts due them from N. N. Etheridge; and it is claimed that Etheridge was authorized to withdraw the fund from the court, and the judgment adjudging the same to him was then valid, unreversed and had never been superseded.

The court below adjudged the responses insufficient, and made the several rules absolute, and from these judgments these several appeals are prosecuted, and, by agreement, are heard together. It is the contention of appellees that they had a lien upon the $6,900 in question, and that the circuit court erroneously adjudged the money to Etheridge, but they contend that such judgment did not destroy or annul their several liens; and inasmuch as the court of appeals reversed the judgment, and adjudged that the lien of the attaching creditors was superior to that of Etheridge, that the lien in fact and in law existed on the fund all the time; hence they argue that these appellants having received that identical money, that they were in law bound to repay the same under and in accordance with the rules issued as aforesaid. The appellants insist that there was no lien upon the fund; that it was simply a liability upon the part of the holder to pay the same under proper orders of the court; and it is further contended that inasmuch as Etheridge, under the judgment of the trial court in the original case, was adjudged the money and the same paid to him, and by him to these appellants as aforesaid, that they are under no legal obligation to refund the same, and that the attaching creditors must look alone to Etheridge. There is no claim by appellees that any effort was being made, or intention made known, that the creditors desired or intended to supersede the original judgment.

We have not been referred to any decision of this court that expressly decides the question herein presented. It is, however, a familiar rule of law that a purchaser of land under a judgment acquired a good title, although the judgment may afterwards be reversed. It seems to be conceded that in cases where a person is garnished that if he pays the debt owing to the defendant, that the party receiving the

money can not be held to account therefor; but all that the plaintiff can recover is a judgment against the garnishee. We do not think the case of Hobson v. Hall, 13 Ky. Law Rep., 109, sustains the contention of appellees. It will be seen in that case that the parties who purchased the attached tobacco had executed a forthcoming bond, which bound them to have the tobacco, or the value forthcoming subject to the order of the court, and although the attachment under which the tobacco had been seized was finally discharged, yet the plaintiff had been allowed to file additional grounds of attachment before the bond had been discharged or sureties released, and the latter attachment having been sustained, the court adjudged a lien in favor of the attaching creditor upon the tobacco in question.

If, instead of the $6,900 being in money, there had been a contest between Etheridge and the other attaching creditors as to a lien upon personal property, for instance, horses and cattle, then in the custody of the court's receiver, and the court had denied any lien to the attaching creditor and adjudged the property to Etheridge, it would seem that he could sell it and pass good title thereto at any time while such judgment was in force.

In Freeman on Executions, volume 3, section 346, it is said: "Upon the reversal of a judgment, after a sale has been made under execution to a stranger to the suit, the defendant must seek redress from the plaintiff. This redress was formerly obtained by a *scire facias quare restitutionem non*. This is still the remedy in some States in cases where the record does not show that the money realized from the sale had been paid to the plaintiff. Where the plaintiff has received the proceeds of the sale the defendant may recover in an action for money had and received. If, however, the money, after being paid to plaintiff, is by him paid to a third

person, it can not be recovered from such person, though he was one of the plaintiff's attorneys." . . .

In Rhorer on Judicial Sales, section 576, it is said: "Where the sale is to a third person and bona fide purchaser, and has been fully completed by confirmation, conveyance and payment, it will neither be avoided nor will it be set aside by reason of a subsequent reversal of the decree. This rule is so generally recognized as to scarcely require authorities to support it. In the language of the Illinois Supreme Court, "if the court has jurisdiction to render the judgment or to pronounce the decree, that is, if it has jurisdiction over the parties and the subject-matter, then, upon principles of universal law, acts performed and rights acquired by third persons, under the authority of the judgment or decree, and while it remains in force, must be sustained, notwithstanding a subsequent reversal."

In the case of Langley v. Warner, 3 N. Y. Court of Appeals, the court, in considering a case somewhat analogous to the case at bar, uses the following language: "The case then comes to this: The money in question, in the regular course of judicial proceedings, came to the hands of the defendant as the attorney of Walsh; and on the subsequent settlement between them the money was passed to the creditor, Walsh, on account of his indebtedness to the defendant. It was the same thing in effect as though the defendant had first paid over the money to Walsh, and the latter had then repaid it to the defendant in satisfaction of his debt. About two months afterwards the judgment was reversed and restitution was awarded to the plaintiffs against Walsh. It was very proper that he should make restitution, for he had in effect received the money and applied it to the payment of his debt. The plaintiffs proceeded to execution against Walsh, in pursuance of the judgment for restitution; but

·682          KENTUCKY REPORTS.          [Vol. 119

Fidelity Trust & Safety Vault Co., &c. v. Louisville Banking Co., &c.

failing in that, they now seek to recover the amount from the defendant. I see no principle on which the action can be maintained. The defendant has got none of the plaintiff's money; he has got nothing but his own. Walsh had a perfect title to the money when it was collected, just as perfect as it would have been if no certiorari had been issued. He had a right to do what he pleased with the money; and he made a very proper use of it by paying his debt. The plaintiffs have taken up the strange notion that because they were trying to get the judgment reversed Walsh could not give a good title to the money, especially if he paid it to one who knew what they were doing. I am not aware of any foundation for such doctrine. As Walsh had a good title to the money he could, of course, give a good title to the defendant, or any one else. No one was bound to presume that the judgment of a court of competent jurisdiction was erroneous and would be reversed. The legal presumption was the other way—that the judgment was right and would be affirmed. But if the judgment had been known to be erroneous the pendency of the proceedings in error could not affect, in the least degree, the title of Walsh to the money. Nothing short of a reversal of the judgment could destroy or impair his right."

In the Bank of the United States v. The Bank of Washington, 6 Peters, 19, the supreme court, in discussing similar questions to that under consideration, said: "But the answer to the argument is that no notice whatever could change the rights of the parties so as to make the Bank of the United States responsible to refund the money. When the money was paid there was a legal obligation on the part of the Bank of Washington to pay it; and a legal right on the part of Triplett and Neale to demand and receive it, or to enforce payment of it under the execution. And whatever

was done under that execution, whilst the judgment was in full force, was valid and binding on the Bank of Washington so far as the rights of strangers or third persons are concerned. The reversal of the judgment can not have a retrospective operation and make void that which was lawful when done. The reversal of the judgment gives a new right or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party has lost by reason of the erroneous judgment; and as between the parties to the judgment there is all the privity necessary to sustain and enforce such right; but as to strangers, there is no such privity; and if no legal right existed when the money was paid, to recover it back, no such right could be created by notice of an intention so to do. Where money is wrongfully and illegally exacted, it is received without any legal right or authority to receive it; and the law, at the very time of payment, creates the obligation to refund it. A notice of the intention to recover back the money does not, even in such cases, create the right to recover it back; that results from the illegal exaction of it, and the notice may serve to rebut the inference that it was a voluntary payment, or made through mistake."

If the contention of appellees that they had a lien upon the specific $6,900, which lien attached and continued with the money, it would seem that if these appellants had paid the money to some other party that appellees would hold such party responsible, and that any and all persons who receive the money would incur a liability to be required to refund the same. Surely this can not be the law. The duty of Etheridge to refund the money is not disputed. And it seems to us that these appellees must look alone to Etheridge for relief or restitution. It results from the foregoing that the trial court erred in making the several rules absolute.

The judgments appealed from are reversed and cause remanded, with directions to adjudge the several responses sufficient and for proceedings consistent herewith.