MOBILE & O. R. CO. v. WASHINGTON & C. RY. CO.

(District Court, S. D. Alabama. May 19, 1917.)

1. COURTS ⬧289—OVERPAYMENT OF FREIGHT CHARGES—ACTIONS TO RECOVER —JURISDICTION.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 9, 24 Stat. 382 (Comp. St. 1916, § 8573), providing that any person damaged by any common carrier subject thereto may bring suit for damages in any District or Circuit Court of the United States of competent jurisdiction, a federal District Court had jurisdiction of an action by one carrier against another, which had demanded and been paid a portion of the freight on interstate shipments to which it was not entitled under the tariffs filed with the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 830.]

2. CARRIERS ⬧202—OVERPAYMENT OF CHARGES—ACTIONS TO RECOVER—RIGHT OF ACTION.

Interstate Commerce Act, § 6 (Comp. St. 1916, § 8569), prohibits any carrier from charging, demanding, collecting, or receiving any greater, less, or different compensation for the transportation of passengers or property between points named in the tariffs filed thereunder than the rate specified in such tariff. Section 8 (Comp. St. 1916, § 8572) provides that any common carrier, doing anything prohibited thereby, shall be liable to the persons injured for the full amount of damages sustained.

Section 9 authorizes any person, damaged by any carrier subject thereto, to sue for the recovery of the damages in any United States District or Circuit Court. Plaintiff and defendant had a joint tariff providing a through rate for shipments of lumber originating on defendant's line, but providing no through rate permitting such shipments to be stopped at the junction point and there dressed and then forwarded. On lumber so shipped defendant collected from the original shipper the local rate to the junction point, but demanded and received from plaintiff a portion of the freight from such junction point to destination; the rate in force on such shipments being the same from the junction point as from the point of origin on defendant's line. *Held*, that plaintiff was entitled to sue for the payments so made, though they were voluntary, and though in making such payments both plaintiff and defendant were guilty of an unlawful act, as plaintiff was damaged by such payment, and the statute is not limited to the regulation of contracts between shipper and carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915.]

At Law. Action by the Mobile & Ohio Railroad Company against the Washington & Choctaw Railway Company. On demurrers to complaint. Demurrers overruled.

Sidney Prince, of Mobile, Ala., for plaintiff.
Harry T. Smith & Caffey, of Mobile, Ala., for defendant.

ERVIN, District Judge. This was an action brought by the Mobile & Ohio Railroad Company against the Washington & Choctaw Railway Company to recover money which had been paid by plaintiff to defendant on a claim by defendant that it was entitled to a division of the freight on certain lumber shipments, which originated on the road of the Washington & Choctaw Company, and were delivered by it to the Mobile & Ohio Railroad Company, and transported by said Company over its lines.

The facts averred in the complaint are that both plaintiff and defendant were common carriers under the jurisdiction of the Interstate Commerce Commission, and that certain carloads of lumber were transported over defendant's line and delivered to plaintiff, who then transported same over its lines to point of destination, and that at the time of the transportation of this lumber there were in effect, published and filed, certain joint tariffs and supplements providing for and covering through movements of lumber from points on defendant's railway to destinations over plaintiff's lines; that there was not in effect at this time, or at the time of the payment of the demand sued for, any joint tariff between plaintiff and defendant which provided a through rate, permitting a shipment originating on defendant's line to be stopped at Yellow Pine, and there dressed and then forwarded over plaintiff's line to point of destination; that there was a blanket rate in force on such shipments, which made the charge the same from point of origin on defendant's line to destination, as from Yellow Pine; that the lumber was transported by defendant over its line to Yellow Pine and there stopped and dressed, and then forwarded over plaintiff's line to destination; that defendant collected from the original shipper the local rate for said lumber from point of origin to Yellow Pine; that defendant presented various bills to plaintiff, claiming some 3½ cents per 100 pounds out of the freight that had been collected by plaintiff for the transportation of said lumber by

defendant from point of origin to Yellow Pine, which bills were paid by plaintiff to defendant without any knowledge by plaintiff that defendant had collected from the shippers the freight from point of origin to Yellow Pine; that defendant was not entitled to any division of the freight collected by plaintiff for the transportation of this lumber; that demand had been made by plaintiff of defendant for repayment of this money, which demand was refused.

The act to regulate commerce provides, among other things:

"Sec. 6. No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

"Sec. 8. That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

"Sec. 9. That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act, may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any District or Circuit Court of the United States of competent jurisdiction."

It is claimed by plaintiff that the collection from it by defendant was illegal under these provisions, and that the act gives it the right to recover the damage it had suffered, being the amount so paid by it to defendant.

Defendant demurs to the complaint, setting up that, under the allegations of the complaint, both plaintiff and defendant were guilty of an unlawful act, that the payment by plaintiff to defendant was voluntary, and that the court has no jurisdiction of the subject-matter of the suit. There are some other grounds of demurrer, as to the sufficiency of the allegations of the complaint, not necessary to be here considered.

[1] Section 9 of the act disposes of the demurrer for want of jurisdiction. Under the facts alleged, the other demurrers would be good, unless the provisions of this act take the facts out from the general rule.

[2] It is conceded by the defendant, where suits are brought by the shipper to recover an overcharge which has been made by a common carrier, that notwithstanding the fact that the money may have been paid by the shipper with full knowledge that its exaction by the carrier was illegal, and notwithstanding the terms of the contract between

the parties, the effect of the act is to make its provisions a part of the contract of carriage, and hence, under the terms of this act; a recovery could be had. But it is contended that the act does not go as far as the plaintiff claims it does, and that where one carrier demands of another carrier more than the share of the freight that the demanding carrier is entitled to, and this demand is paid by the carrier on whom the demand is made, there can be no recovery under the provisions of the act by the one carrier from the other. The whole question depends on the construction of the act.

It will be noticed, in the language of section 8, that in case any common carrier shall do, or cause to be done, any act or thing prohibited by this act, that such carrier shall be liable to the person injured for the full amount of damages sustained in consequence of such violation of the provisions of this act. Section 9 gives right of action to any person claiming to be damaged by any act of the carrier, and provides that suit may be brought in any District Court of the United States of competent jurisdiction. The provisions quoted from section 6 provide:

"Nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of * * * property than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares and charges so specified, nor extend to any shipper or person, any privileges or facilities in the transportation of * * * property, except such as are specified in such tariffs."

The provision just quoted prohibits the collection by the carrier of a greater or different compensation for the transportation of property than the rates specified in the tariff which may be filed. In this case the allegation is made that this defendant had already collected from the shipper the local rate from point of origin to Yellow Pine, and that thereafter this defendant again collected from plaintiff 3½ cents per 100 pounds to cover the share which it claimed as its portion of the freight for this same haul from the point of origin to Yellow Pine. Certainly, it needs no argument to show that to collect a double fare, or to collect one time as a local rate from the shipper, and to again collect for the same service as a portion of the interstate shipment from point of origin to point of junction on plaintiff's line, is a collection by defendant of a greater compensation than provided for in the rates filed and published according to law.

The second payment having been made by plaintiff, and, under the averments of the complaint, the plaintiff being entitled to all of the freight charges from Yellow Pine to point of destination, certainly plaintiff has been damaged by this payment to defendant to the extent of this payment. Even if the published rates had allowed milling in transit, the defendant, having already collected from the shipper its portion of the freight, would have no right to again collect from plaintiff for the same service.

It will further be noticed that section 6 says:

"Nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of * * * property."

The language is broad, and does not limit the receipt for carriage of the freight to the receipt from the shipper. The language embraces all payments of freight by any person, and includes in its terms, it seems to me, the various carriers over whose lines a shipment may pass, as well as the shipper and the carrier to whom payment is made by such shipper. I can see no reason to limit this language to transactions between the shipper and the carrier, when the language has not been so limited by the act. Certainly the language is broad enough to embrace payment by one carrier to another over whose lines the freight moves. If the act is, by its terms, made a part of every contract of af-freightment between the shipper and carrier, then it seems to me it is also made a part of every contract between the various carriers over whose lines the freight moves.

The act on its face shows all through it that its purpose was not merely to regulate the contracts between shipper and carrier, but, as its title imports, was to "regulate commerce," and it regulates this commerce as between all the parties to a shipment of freight over whose lines such shipment passes. Practically the same question raised by the demurrer is presented in the case of Pennsylvania Railroad Co. v. International Coal Co., in 173 Fed. 7, 97 C. C. A. 389, where a shipper was seeking to recover for an overcharge, and the Third Circuit Court of Appeals used the following language:

"The next assignment of error raises the question whether the plaintiff can maintain this action, in view of the fact that, with knowledge that it was being charged a higher rate for its free coal than other shippers were charged for contract coal, it nevertheless paid the freight without protest. It is now claimed that the absence of protest accompanying payment of freight is fatal to the right of action. We are of opinion such is not the case. This is not the ordinary case of a suit to recover back a sum of money which has been mistakenly paid and received, but is one where a statute has stamped the receipt of the money as unlawful. Thus section 2 provides: 'Such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful'—and creates a statutory right of recovery, not of the freight paid, but of damages, viz.: 'Such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act.'

"From this it is clear that, Congress having conferred a statutory right of action, and having imposed a liability to action by section 8 on the carrier who shall 'do, or cause to be done, or permit to be done, any act, matter or thing in this act prohibited or declared to be unlawful,' and, we may add, having conferred such right of action without imposing the precedent condition of protest, it follows that the courts cannot by construction impose on the statutory right a condition which Congress has not imposed. It follows, therefore, that this assignment cannot be sustained. This is in harmony with the holding of the Supreme Court in United States Bank v. Bank of Washington, 6 Pet. 17, 8 L. Ed. 299, where it was said: 'Where money is wrongfully and illegally exacted, it is received without any legal right or authority to receive it; and the law, at the very time of payment, creates the obligation to refund it. A notice of intention to recover back the money does not, even in such cases, create the right to recover it back. That results from the illegal exaction of it; and the notice may serve to rebut the inference that it was a voluntary payment, or made through mistake.'"

It seems to me that this decision determines the questions here raised, and as the right of action under the terms of the shipping act is not limited to shippers, but is given to any person who may be damaged, the demurrers are therefore overruled.