## McDONALD AMUSEMENT CO. v. FLEMING BROS. LUMBER CO. (DENVER MANTEL & TILE CO., Intervener).

Circuit Court of Appeals, Tenth Circuit. October 16, 1929.

No. 10.

Walter T. More, of Torrington, Wyo. (Erle H. Reid, of Torrington, Wyo., on the brief), for appellant.

C. R. Ellery, of Cheyenne, Wyo., and Edgar C. Craft, of Denver, Colo. (Dillon, Ellery

& Spencer, of Cheyenne, Wyo., on the brief), for appellees.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. The trial court foreclosed three mechanics' liens against the property of appellant, and this appeal follows. We will treat them separately.

1. The only point urged as to the lien of the Fleming Bros. Lumber Company is that it was not filed within the time prescribed by the state statute. The Wyoming statute gives a subcontractor 90 days in which to file his lien (section 4866, Wyoming Comp. Stat. 1920), and the Supreme Court of that state has held that the time commences to run from "the date of the furnishing of the last item originally included in the account" (Big Horn Lumber Co. v. Davis, 14 Wyo. 455, 84 P. 900, 85 P. 1048, 7 Ann. Cas. 940); and that the lien is not in existence until the lien statement is filed (Becker v. Hopper, 22 Wyo. 237, 138 P. 179, Ann. Cas. 1916D, 1041). This court will follow the decisions of the Wyoming Supreme Court construing the mechanics' lien statute of the state. In re Grissler, 136 F. 754 (2 C. C. A.); The Winnebago, 141 F. 945 (6 C. C. A.), certiorari denied 200 U. S. 616, 26 S. Ct. 752, 50 L. Ed. 621.

In oral testimony, one of the officers of the lien claimant stated that "The last material we delivered was on February 3, 1927." This was more than 90 days before the lien was filed. However, there was received in evidence without objection an affidavit of the secretary of the company stating that the last material was furnished on February 10; and the books of the company showed that on February 10 there was furnished certain lumber, describing it in detail. There was ample evidence to sustain the trial court's finding that lumber was furnished on February 10, as the books showed; and February 10 was concededly within the 90 days. The question of whether the date was put in issue, as provided by Equity Rule 30 need not therefore be decided; it may be noticed, however, that counsel filing this answer are the same counsel who answered to the third claim here involved, and in the latter answer they squarely and unequivocally put the date in issue; their answer to the claim now under consideration is so indefinite and general as to lead to the conclusion that they did not intend to join issue on the date. The decree will be affirmed as to this lien.

2. The second lien foreclosed is that of M. T. Gerton, and again the principal question is whether the lien statement was filed in time. When first on the stand Gerton testified he completed the work on January 28, 1927, which was more than 90 days before he filed his lien. He was then recalled and testified that after the work was originally finished on January 28, the architect insisted that certain replacement work be done; that the witness acquiesced and sent his men back to complete the job to meet the requirements of the architect; that they finished up on February 25, which was within the statutory 90 days. He produced his time book in corroboration. The appellant called the architect, but his testimony in substance corroborated Gerton's; while he did not remember the date, he did remember that "some of the replacement work was done by Mr. Gerton or his men." The record leaves no doubt as to the correctness of the trial court's finding on this question.

There was an issue raised as to whether Gerton had fully performed his contract, and, if not, as to the deduction that should be made for faulty work. The witnesses variously estimated the extent of the delinquency, and its measure in money. It is a pure question of fact, and we see no occasion to disagree with the amount deducted by the trial court. The decree will be affirmed as to this lien.

3. The third lien foreclosed is that of the intervener, the Denver Mantel & Tile Company. The record is clear, and the trial court found that this lien was filed more than 90 days after the last work was done, but within the four months allowed by the Wyoming statute to a contractor, as distinguished from a subcontractor. The trial court found that the intervener was in fact a contractor, and foreclosed the lien as such. In this, we think there was error.

The intervener concedes that it made its contract with the J. A. Johnson Construction Company, the contractor. The record does not show how much work was done each day or week by the intervener. Its statement shows items of freight paid as early as December 2, 1926; and other items in December and early in January. The contractor remained on the job until after January 22; at least, the owner testified that the first bill he paid, except to the contractor, was "after January 22nd; I paid everything." Some time after February 18, the contractor informed the intervener that the owner was paying the bills, and its claim should be presented to the owner. In May a claim was made on the owner, who advised the intervener that the contractor had defaulted, his

bondsmen had refused to do anything, and that the intervener "had better play safe."

Conceding, for the sake of brevity, that a subcontractor may, by mutual agreement with the owner, change his relationship to that of a contractor, there is nothing in this record to support a finding of any such agreement between the owner and the intervener. The record is to the contrary. True the owner paid some bills of the contractor after he defaulted; but an honest owner would be apt to do that, at least until he had paid out the contract price. The owner's advice to the intervener to "play safe," that is, to file a lien, negatives any intent on the part of the owner to become personally responsible. If the intervener started out as a subcontractor, and wound up as a contractor, there must be some proof of a new contract, to which the owner is a party. There is none. If there was one, when was it made? How much of this $1,026 worth of work was done under the subcontract, and how much under the new contract? The record gives no answer, and yet, in any event, no lien could attach here except for work done under the alleged new contract.

■ Moreover, the intervener's pleading will not support the decree. Not only does it fail to allege any such contract with the owner, but on the contrary it repeatedly alleges a contract with the contractor for all of the work done. After the decision of the case, counsel asked and was given leave to amend its pleading so as to show that prior to the completion of the work the contractor abandoned the job and the owner took it over, and that thereby the intervener became a contractor. But this was on January 22, 1929, more than six months after the filing of the lien statement; and the Wyoming statute requires a suit to foreclose a mechanic's lien to be filed within six months. Section 4876, Wyoming Comp. Stat. 1920. To avail the intervener, the amendment must be construed as setting up a different contract from that declared upon, between different parties, and the existence of a contractor's lien instead of the subcontractor's lien sought to be foreclosed by his original bill. So construed, the amendment introduces new facts and a new cause of action, and the statute of limitations bars any relief thereunder. Union Pacific Railway v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983. In Sicard v. Davis, 6 Pet. (31 U. S.) 124, 8 L. Ed. 342, Chief Justice Marshall said: "The second count in the declaration, being a demise from a different party asserting a different title, is not distinguishable, so far as respects the bar of the act of limitations, from a new action." Page 140 of 6 Pet., 8 L. Ed. 342.

Neither the facts nor the pleadings will support a decree foreclosing this lien. The decree as to the intervener, the Denver Mantel & Tile Company, will be reversed; otherwise affirmed. ·